No. 3371

Second Circuit

———

HOLMES v. T. & P. RY. CO.

———

(July 1, 1929. Opinion and Decree.)
(November 4, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

———

Foster, Hall & Smith, of Shreveport, attorneys for plaintiff, appellee.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellant.

REYNOLDS, J. This is a petitory action. Plaintiff alleges—

"that The Texas & Pacific Railway Company, a corporation organized under an act of Congress of the United States and doing a general railroad business in the state of Louisiana, is in the actual physical possession of lots 5, 6, 7, 8 and 9, and part of lots 4 and 10, of Block 23 of the town of Hosston, Louisiana, without any title whatsoever thereto and without any right to remain on said property * * * and refuses to deliver possession of said property to petitioner without any good or legal cause for such refusal."

She further alleges that the defendant has occupied the described premises for more than nine years and that the minors of whom she is tutrix, namely, Samuel Hoss, Jr., and Martha Helen Hoss, are entitled to be decreed owners of the property and put in possession thereof and to further judgment against the defendant of $100 a year for the use it has had of the premises for nine years.

She deraigns title in the minors by unbroken chain going back to the United States.

The defense is:

"That many years ago your defendant, or the Texarkana, Shreveport & Natchez Railway Company, its predecessor in title, entered upon said lots without objection on the part of the then owner or owners and constructed thereon its section house or houses as necessary component parts of a line of railway, and that it so appropriated said property and devoted same to public use as part of a line of railway and has so used and continued to use same as such; and that it thereby became the owner of said property and cannot be dispossessed of same."

The case was tried on these issues and judgment was rendered—

"recognizing Samuel Hoss, Jr., and Martha Helen Hoss as the true and lawful owners of Lots 4, 5, 6, 7, 8, 9 and 10 of Block 23 of the town of Hosston, Caddo parish, Louisiana, * * * and as such entitled to the full and undisputed possession thereof, and ordering the Texas & Pacific Railway Company to deliver possession of said property unto the said Samuel Hoss, Jr., and Martha Helen Hoss."

And there was further judgment in favor of the minors and against the defendant for $450 for nine years' use of the land.

From this judgment the defendant has appealed.

OPINION.

The question presented for decision by this appeal is whether the purpose for which defendant appropriated and is using the plaintiffs' property is one of those for which the law grants to railroad corporations the right of expropriation.

Counsel for plaintiffs say, in brief, that:

"The law seems to be well settled that where a railroad company has the right to expropriate a piece of land for a certain purpose, and, instead of bringing expropriation proceedings to obtain title, the railroad company simply occupies the land and uses it for purposes for which it might have been expropriated, then the land owner's remedy is to bring an action of damages against the railroad company for the property so taken; * * * therefore, in the case at bar, if, in the year 1902, the Texas & Pacific Railway Company had the right to expropriate these lots for the purpose of erecting thereon dwelling houses for its employees, * * * the railroad company has acquired the ownership of the lots * * * If, on the other hand, the railroad company did not have the right to expropriate this property in 1902 for the purpose of building dwelling houses for its employees, * * * the railroad

company holds the property as any ordinary person would, namely, as a trespasser, and plaintiffs have a clear title to the lots and are entitled to a fair rental for them during the period of their occupancy by the railway company."

And they quote the testimony of R. B. Ayres, defendant's division superintendent, that the property was used for section house purposes and, further—

"Q. Just what is a section-house, Mr. Ayres?

"A. Well, it is built for the purpose of housing the men.

"Q. Just in the nature of quarters for them to live in, is it not?

"A. Yes, sir."

And further contend that—

"there is neither legislative authority nor jurisprudence in this state or in any other state that would give to a railroad company the right to expropriate property of a private individual for the purpose of erecting thereon dwelling houses for its employees. The testimony of Mr. Ayres is to the effect that a section house is nothing more or less than a dwelling house for the employees of the railroad company; * * * therefore, in this case, the railroad company had no right to expropriate the land * * *"

And counsel cite many textwriters and decisions of various courts in support of their contention, including that decision of our own Supreme Court in John T. Moore Planting Co., Ltd., vs. Morgan's L. & T. R. R. & S. S. Co., 126 La. 840, 53 So. 22, wherein it was said:

"Now, the courts seem to be agreed that the providing of a dwelling for operatives or agents (except perhaps bridge and switch tenders, and, we might, perhaps, under special circumstances, add, section hands) is not considered to be a purpose necessary for the operation of the railroad, such as could justify forced expropriation."

But say that the clause, "and, we might, perhaps, under special circumstances, add,

section hands" was obiter and therefore without weight here.

Counsel for defendant cite Act No. 73 of 1902, section 2 of which provides:

"That such railway companies of any other state or territory of the United States extending, constructing and operating their lines of railroad into and through this state, shall have the power to expropriate land and other property for their railroad, right of way, switches, sidings, branches, spurs, depots, and depot grounds, yards, and any land and property for railroad purposes, in the manner as is now or may be provided under our laws for expropriation by railroad corporations."

And contend that this section, and particularly the clause "and any land and property for railroad purposes" authorizes the expropriation of private property for section house purposes; and they cite the case of John T. Moore Planting Co., Ltd., vs. Morgan's L. & T. R. R. & S. S. Co., supra, and quote therefrom the paragraph we have copied above and contend that the clause in it which counsel for plaintiffs say was obiter expressly recognizes the right to expropriate for the purposes named. And they say:

"If a company has a right to expropriate land for the purpose of providing dwelling houses for bridge and switch tenders, can it logically be said that it has no right to expropriate land for (dwelling houses) for section foreman and laborers? And, [if it may be logically so said] under what special circumstances may a railroad company expropriate land for [dwelling houses] for section hands? When is the right to expropriate, in such a case, to be exercised, and when can it be denied? It seems to us that it either exists under the law of this state or it does not, and that there are no 'special circumstances' that can change the written law of the state * * *"

We do not think the act of 1902 grants the right to expropriate private property

for the purposes of section houses or that the Supreme Court, in the decision quoted from, intended to hold that the right exists.

Kansas City, Shreveport & Gulf Ry. Co. vs. Meyer et al., 166 La. 663, 117 So. 765, was a suit by a railroad corporation to expropriate less than half an acre of land belonging to a private individual for the purpose of laying a switch or spur track on it leading off from its main line to the property of a certain shipper.

The defendant denied the right of the plaintiff to invoke expropriation proceedings, in that it did not allege a public necessity for the taking of the property, or any public use thereof, and did not show any necessity for the taking of the *particular* property in question.

It was contended on the part of the plaintiff (1) that the question of the necessity of constructing switch or spur tracks is not a judicial question, but is one that is within the exclusive discretion of the railroad company; and (2) that, if the expediency or necessity of expropriation is triable at all, it should be tried by a jury of freeholders.

Dealing with these contentions the court said:

"The first contention is based on the theory that, since by special legislation (Act 74 of 1902) a railroad company is authorized to expropriate private property for switch and spur tracks, and by Act 267 of 1910 to construct and operate industrial switch or spur tracks, * * * the expediency or necessity for the exercise of eminent domain is to be determined by the railroad company, upon which the authority to expropriate has been conferred by the legislature * * *

"The legislation of this state, referred to by counsel, has not changed the policy of the law with respect to the exercise of eminent domain. On the contrary, the statutes provide that expropriation for switch or spur tracks is to be governed by the general expropriation laws of the state.

"Those laws are to be found in the Civil Code, under the heading 'Of the Compulsory Transfer of Property,' the very first article (article 2626) of which impliedly, if not expressly, limits the obligation of yielding by the owner of his property to the community for public use, to cases where the property is needed for such general and public use, and, where such owner refuses, he may, by authority of the law, be divested of his property to the extent needed for the public use."

And, after citing many decisions in support of the proposition that the question as to what constitutes public utility and public purpose in matters of expropriation is for judicial determination, and that an owner, before surrendering up his property, has the right to contest in the courts, with the party claiming the right of expropriation, the necessity of the expropriation, the court further said:

"The authorities cited settle beyond controversy the question that the expediency and necessity of expropriation, when sought to be exercised under the authority of eminent domain, is judicial, and that the owner may always contest such question before the courts."

The special legislation relied on by the defendant, as authority to expropriate plaintiffs' land for section house purposes, also provides that the right shall be exercised "in the manner as is now or may be provided under our laws for expropriation by railroad corporations;" or, in other words, pursuant to articles 2626 et seq., of the Civil Code.

Not only must the right to expropriate for the purpose desired exist but the necessity for it also must exist and this necessity must extend to the particular prop-

erty sought to be expropriated; and if it be conceded that the right to expropriate for section house purposes exists, the special circumstances necessary to authorize the exercise of the right are not shown to exist.

Counsel for defendant say that section houses are necessary in order to have section laborers together, so that in case of an emergency, such as a burned bridge, broken rail, or wash-out, they could quickly be called to work, and that by keeping the laborers together in section houses they are at all times available for work and that thereby the railroad company is the better enabled to perform its duty to the public of safely transporting persons and property on schedule time.

But there is no proof of this in the record, and though we might conceive how it might be so were Hosston a large city, in view of the fact that it is only a small village we cannot imagine why section hands living apart in different sections of the village could not promptly be gotten together.

Neither can we imagine why plaintiffs' land and none other would serve defendant's purpose.

Be that as it may, however, we are of the opinion that neither from the standpoint of right of eminent domain nor that of railway expediency has defendant shown any right to retain possession of plaintiffs' property.

We find no error in the judgment appealed from and accordingly it is affirmed.