## KANSAS CITY SOUTHERN RY. CO. v. MARIETTA OIL CORPORATION et al.

## MARIETTA OIL CORPORATION v. KANSAS CITY SOUTHERN RY. CO. et al.

### Nos. 705, 728.

District Court, W. D. Louisiana,
Shreveport Division.

Oct. 2, 1937.

In case No. 705:

Wilkinson, Lewis & Wilkinson and E. S. Klein, all of Shreveport, La., for complainant.

E. P. Lee and J. D. Barksdale, both of Shreveport, La., for respondents.

In case No. 728:

Lee & Lee and Barksdale, Bullock, Warren, Clark & Van Hook, all of Shreveport, La., for complainant.

Wilkinson, Lewis & Wilkinson, Tucker & Mason, and Irwin & Cowles, all of Shreveport, La., for respondents.

DAWKINS, District Judge.

The parties to these suits will be referred to as the Oil Corporation and the Railway Company, respectively. On May 29, 1936, the Railway Company filed its bill against the Oil Corporation, to enjoin trespass upon and interference with its possession of the following property: "A strip of land one hundred (100) feet in width across the West half of the Northwest Quarter of Section 23, Township 23 North, Range 16 West, and between parallel lines measuring fifty (50) feet from the center of the main line track of The Kansas City Southern Railway Company, as now located through said property, all in Caddo Parish, Louisiana."

Upon hearing, a preliminary injunction was granted.

Defendant's contention, in substance, was that it was the owner in fee of the strip in question and the Railway Company owned merely a servitude; that the property being in a proven oil field, defendant was entitled to drill upon and produce oil therefrom so long as it did not interfere with the operation of the railroad.

The suit of the Oil Corporation against the Railway Company was to enjoin its permitting the use of the right of way for purposes other than those of a railroad; plaintiff alleging that it had been leased to other persons for private business uses, and for which rentals were being collected. It asked for an accounting. for the rentals, and also claimed damages. A nonsuit was entered as to the damages.

The two cases were consolidated for the purposes of trial.

The issues are to be determined, first, upon the question of title, and secondly, according to whether the proposed operations of the Oil Corporation will so interfere with the railroad as to prevent its safe and efficient operation.

The facts with respect to the title are as follows:

On April 8, 1899, the Lynn and Big Pine Lumber Companies executed a deed in fee to one W. S. Parker, covering property described as follows: "The S.W.¼ of the N.W.¼ of Sec. 23, Township 23, Range 16 W. Less right of way 100 feet in width reserved for Kansas City, Pittsburg and Gulf Railroad Company through said lands. In all (36-32/33) thirty-six and 32/33 Acres."

On November 3, 1900, the Lynn Lumber Company conveyed to the Kansas City, Shreveport & Gulf Railway Company, along with other lands:

"* * * A right of way over and across the following tract of land * * *; also West one-half of northwest quarter of Section twenty-three (23) Range Sixteen (16) West, (W.½ of N.W. ¼ of Sec. 23, T. 23, N. of 16 W.), said two pieces of right-of-way containing 6 and 96/100 acres, more or less.

"The right-of-way herein granted being one hundred feet in width, as now located, with the privilege to the said railway company of cutting down all trees along the line of said right-of-way outside of its limits, which in falling might reach the track.

"This right-of-way shall be in perpetuity, or so long as it is used by said Company as a railroad."

No deed from the Big Pine Lumber Company to the Railway Company was ever given, and the only recognition of the rights of the railroad, in so far as said lumber company are concerned, was the reservation in the deed to Parker, above quoted.

The foregoing represents the entire recorded title of the Railway Company.

The claims of the Oil Corporation are based upon the following transfers (none beyond those from the Big Pine and Lynn Lumber Companies being included, since both parties to the present suits claim under them as common authors of their titles.)

On November 16, 1910, the Big Pine Lumber Company of Arkansas, conveyed to Big Pine Lumber Company, Limited, of Louisiana, all lands and property owned in Louisiana, including those in Caddo parish. There were no specific descriptions. The latter company, on March 18, 1936, executed a deed to Clem S. Clarke, covering the 100-foot strip or right of way occupied by the Railroad Company, which is the subject of this litigation. The stockholders of Lynn Lumber Company likewise conveyed to Clarke all of its stock, property, and assets, and on May 21, 1936, it executed in Clarke's favor a deed to said 100-foot right of way. On May 18, 1936, the Big Pine Lumber Company, Limited, transferred to Clarke all of its right to the 25-foot strip adjoining the right of way and which had formerly been a part of a 50-foot street on the east side of the railroad, and on the 21st day of May, 1936, the Lynn Lumber Company made a similar conveyance of the same strip to Clarke. The police jury of Caddo parish had, through proceedings, authorized by statute, closed this street, and under the terms of that statute the space occupied by the street reverted to the owners of adjoining property in equal proportions, that is, 25 feet to each owner on either side thereof.

On May 22, 1936, Clarke executed a deed to Marietta Oil Corporation, defendant in No. 705 and plaintiff in No. 728, above. Thereafter, a contract of lease was entered into with the Eastern Texas Petroleum Company, for the drilling of wells, and some five locations were made along the east side of the railroad.

From the above statement of facts and terms of the deeds, it seems clear that the Railway Company does not own the fee of the 100-foot strip comprising its right of way, but only the right to occupy and use it for railroad purposes. If that use were discontinued, the unqualified ownership would revert to the original owners of the land, Big Pine Lumber Company, Limited, and Lynn Lumber Company, or their transferees, who, as the above recital shows, are the Marietta Oil Corporation and its lessee. The Railway Company cannot dispute the title of its own author, who was the same as that of the Oil Corporation.

In John T. Moore Planting Company v. Morgan's Louisiana & Texas Railroad & S. S. Company, 126 La. 840, 53 So. 22, 33, the Supreme Court of Louisiana said: "We cannot agree with the proposition that upon the issue of the necessity vel non of

taking the fee, instead of a servitude only, the burden of proof lies on the owner of the property to show the absence of necessity, in cases where the railroad is chartered in perpetuity. The perpetuity, vel non of the charter of the railroad is not determinative of the necessity, vel non, of taking the fee. Non constat that a perpetual servitude will not answer every purpose just as well in the case of a perpetual railroad as in that of an ordinary railroad. There is no reason why a railroad, because it is perpetual, should be given the mineral and other subsoil rights when it can have need of surface rights only. We repeat, a railroad chartered in perpetuity stands on the same footing as any other railroad with reference to the extent and kind of property it needs for operation."

The case must, therefore, be determined on the question of whether the circumstances and reasonable requirements of the Railway Company, including safety of operation, are such as to preclude the Oil Corporation from availing itself of the right which it otherwise owns of exploring for the oil or other minerals beneath the surface, which the proof shows is to be had simply by drilling. The location of the first well which the Oil Corporation was preparing to drill when it was enjoined, is some 45 feet from the center of the main line of the track and only 5 feet within the extreme east line of the right of way. At the time the preliminary injunction was granted, it was contended that the 50-foot space on the east side of the center line of the right of way was necessary for the building of additional switch tracks, because of the increased volume of business of the Railway Company, brought about by the discovery of oil in the Rodessa field; but, notwithstanding more than a year had expired from that date until this case was tried on the merits and the rush of flush production was over, no such construction had commenced, and the evidence in my opinion refutes any such intention or necessity at this time. While the evidence is to some extent conflicting as to possible danger to the operation of trains, etc., I think, when fairly considered, there is no greater danger than would be the case if the well was to be drilled 5 or 25 feet away. With modern means for protecting a situation of this kind, drilling can be done with reasonable safety, as was demonstrated by the Railway Company's own lessee, who was permitted to drill some several hundred feet further south in the heart of the village of Rodessa, upon a part of its right of way which it owned in fee, just outside of the west line of this same servitude or right of way on the other side of the track. This latter operation was in close proximity to the depot and much closer to the siding or switch track of the Railway Company than is the location for the first well of the Oil Corporation, some several hundred feet further north, and away from any structure or buildings of the Railway Company or other persons.

The attitude of the Railway Company appears to me to be an arbitrary one, and I think is actuated by a desire to itself take or withdraw the oil from this right of way through the wells which it has permitted its own lessee to drill, as above indicated. It should not be permitted to do this, and the Oil Corporation should not be deprived of its rights, except in a case of reasonably clear necessity, showing that the space is necessary for the use of the railroad, or dangerous to its operation. I do not believe this has been done, but, on the contrary, the well of the Oil Corporation can be drilled with reasonable safety and without interference with any requirements of the Railway Company. Once it is completed and either flows or is put on the pump, there will be no danger whatever, and certainly no obstruction to the activities of the Railway Company during the period which production will last.

As to the effort of the Oil Corporation to enjoin the Railway Company from allowing its customers to occupy a part of the right of way on the west side with platforms or warehouses, it is shown that these leases were made for nominal amounts, to wit, $12 per year, and couched in such form in order to prevent these beneficiaries from acquiring any different right from the use of the property. They were put there for the convenience of the Railway Company in operating its business and serving its customers. They do not in any manner interfere with the proposed operations of the Oil Corporation, and the amounts received are too insignificant to induce a court of equity to require an accounting.

There should be judgment for the Oil Corporation dissolving the injunction in No. 705 and for the Railway Company in No. 728, dismissing the Oil Corporation's case.

Proper decree should be presented.