LAND, J.
This is an action of jactitation or slander of title brought by the plaintiff as owner of the Wau'bun plantation against the defendant in actual possession of the portions thereof covered by its tracks and buildings.
Plaintiff alleged its actual possession of all of the remainder of said plantation, and that the defendant had slandered its title by claiming ownership of certain portions thereof beyond the grounds actually covered by the tracks and buildings of the railroad company.
Plaintiff prayed for judgment quieting it in its possession and ownership of the lands described in the petition, and for $5,000 as damages for slander of title, and for judgment restraining the defendant from slandering said title and from trespassing upon said lands, save in the exercise of the servi *845 tude it now enjoys on the lands actually occupied by its buildings and tracks, and from expropriating all or any part thereof until such time as the defendant may establish its right to claim the ownership of any part of said lands.
Por answer, the defendant, after pleading the general issue, averred its ownership in fee simple of all the lands admitted to be in its possession, and pleaded the prescription of 2, 10 and 30 years acquifendi causa.
As to the other lands described in the petition, defendant further answering especially denied that plaintiff was in the possession of the same, and averred that, plaintiff being out of possession was without legal right to maintain this suit for slander of title.
Defendant prayed for judgment decreeing it to be the owner in fee simple of the lands admitted to be in its possession, and rejecting plaintiff’s demand as to all the other lands described in the petition, with a reservation of its rights as to the same.
After a lengthy trial, the trial judge took the case under advisement, and handed down a carefully prepared opinion covering the many issues of fact and of law involved in the controversy, and rendered judgment in favor of the defendant as to the lands actually covered by its right of way, building, etc., and in favor of the plaintiff as to the other lands in controversy.
Both parties have appealed from the judgment. Six volumes of pleadings and evidence, and numerous exhibits, attest the zeal and industry of counsel.
Plaintiff traces its title back through mesne conveyances to Mrs. Celeste Tanner, who purchased the plantation in the year 1845. The defendant’s title rests (1) on a grant from the same author by authentic act executed in 1854, and recorded in the parish of Lafourche, but never recorded in the parish of Terrebonne; and (2) on the prescription of 10 years, based on recorded titles, and on the prescription of 30 years, based on possession alone.
The grant was filed in evidence subject to objections, but was eliminated in the decision of the court because not recorded. The deed, however, is in the record for what it is worth, and if not a title as against the plaintiff, throws light on the origin, nature, and extent of the defendant’s possession. The deed referred to was a grant of right of way and of certain parcels of land to the New Orleans, Opelousas & Great Western Railroad Company. The right of way proper was restricted to not more than a double main track, and to land actually taken up or covered by the roadway and ditches. The use of the land donated was limited to railroad purposes, such as depots and other necessary structures.
The New Orleans, .Opelousas & Great Western Railroad Company entered under the grant and constructed its line through said plantation. Mrs. Tanner sold the plantation in 1868. Plaintiff acquired the Tanner title in 1898 through mesne conveyance.
In 1869, by decree of the United States Circuit Court for the district of Louisiana, the marshal advertised and sold at public auction the whole completed grand division of the New Orleans, Opelousas & Great Western Railroad between Algiers and Berwick, then in full operation, together with rights of way, roadbeds of main tracks and branches, also all depots and lands specially appertaining to them, and also all the buildings, wharves, and all the movable property belonging to said railroad. There was also advertised and sold several lots or parcels of ground, two of which are involved in this litigation and are the same set forth in the Tanner grant. All of said property was adjudicated and conveyed to Charles Morgan, who in 1878 deeded the same, with other *847 property, to the Morgan’s Louisiana & Texas Railroad & Steamship Company, defendant herein.
The Tanner grant of 1854 was never recorded in the parish of Terrebonne. The railroad, however, having entered upon the land and constructed its roadbed, tracks, switches, and buildings thereon under the terms of the grant, was in lawful possession when Mrs. Tanner sold the plantation in 1868. Under the Tanner grant, as already mentioned, the right of way was restricted to the land actually taken up by the roadway and ditches, and the width was limited to what was necessary to construct and maintain a double track. The railroad company obligated itself to construct two large ditches or canals for drainage purposes, and was released from all liability for damages for removing earth from a certain piece of land on the north side of the track. It follows that the parties contemplated that the ditches necessary for the work of construction should mark the limits of the right of way. It may be assumed that the right of way through the plantation was intended to be uniform, as is the custom in railway construction. The grant also included two certain described lots or tracts Of land on and adjacent to the Bayou Terrebonne, upon which to erect and maintain the necessary depots, buildings, and structures that might be required in the transaction of the business of the company to that point. The use of these lots was restricted to railroad purposes unless with the consent of the owner of the plantation. When this grant was made the roadbed had been constructed, in part, at least, through the plantation.
The right of way was not defined in any of the subsequent titles under which the defendant claims, and its extent is one of the important issues in the case.
It is impracticable to set forth all the evidence bearing on' this issue or to condense it within a reasonable compass. There is no force in the contention of the plaintiff that the right of way should be restricted to the base of the embankments, or in that of the defendant that it should embrace drainage canals and excavations of many feet in width. A railroad right of way includes the space necessary to be used in the construction of not only the roadbed, but the berm and ditch whenever necessary.
The trial judge evidently reached the conclusion that the defendant was entitled to a right of way 100 feet in width from the east line of the Wauban plantation to Bayou Terrebonne, but on some portions of the line he restricted or extended it to the edge of the ditches. The decree is quite lengthy, and is confused by describing separately the strips of land covered by the embankments, and the strips lying between their base and a line drawn 50 feet from the center line of the main track or between such base and the edge of barrow pits or ditches. As the right of way, as marked out by the 'barrow pits, ditches, clearings, etc., in some places greatly exceeds and in others is less than 100 feet in width, for the sake of uniformity and in justice to both parties, we think that an average of 50 feet on each side from the center line of the track should he adopted.
Plaintiff’s own engineer testified that a width of 100 feet was necessary. In places the outer edges of the large ditches would extend the right of way many feet beyond a line drawn 50 feet from the center of the track.
The two tracts of land donated by Mrs. Tanner in 1S54 to the railroad were occupied and used from the beginning for railroad purposes. On them were tracks, switches, buildings, a turntable, and a wharf. These two tracts were purchased by Charles Blor-gan in 1869 at a judicial sale, and were by him conveyed to the defendant in 1879. The site originally was a cane field. After the *849 construction of the railroad the plantation fences were removed, and these two tracts have never since been inclosed. Plaintiff claims that, having the better title, it has constructive possession of all portions of said tracts not actually occupied by the defendant. Plaintiff’s acts of possession seem to have consisted of cutting grass once or twice a year, in digging two small drains, in the erection of a small horse shelter, and in a permit given to a third person to remove some earth from the premises.
These isolated acts were long subsequent to the acquisition of title by defendant by the prescription of 10 years. By the grant of 1854, these two tracts were severed from the plantation, and were held and possessed by the grantee for 14 years under’a title perfect against the then owner of the plantation. In 1868 when Mrs. Tanner sold the plantation as a whole, she had no possession of these tracts to deliver to her vendees. In 1SC9 Charles Morgan acquired these lots at a judicial sale and held possession under his title until 1879, when he sold the same to defendant. Hence, the defendant and its author have held actual possession of this property under recorded deeds since 1869. On the other hand, the plaintiff purchased in the face of the open and notorious possession of the railroad under recorded deeds. Plaintiff has merely a paper title to lands, which the author of his title donated and delivered to the author of the defendant railroad more than 50 years ago. Mrs. Tanner had no actual or constructive-possession of these tracts to convey to her vendees.
The authorities cited by our learned Brother have not, in our opinion, any application to the facts of this case. In Hunnicutt v. Peyton, 102 U. S. 333, 26 L. Ed. 113, the syllabus reads as follows:
“The possession of a person who under color of title enters upon vacant lands and holds adversely is construed to hold so much as is within the boundaries of his title, and to that extent the true owner will be deemed to be disseised. But if the latter be in actual possession of the lands upon which the entry is made, his constructive seisin extends to all not in fact occupied by the intruder.”
We cannot perceive what application this doctrine can have to the case at bar, where-Mrs. Tanner, the owner, conveyed parts of the whole tract possessed by her to the author of the defendant. The seisin of Mrs. Tanner was vested in her grantee, who at once became entitled to all the benefits of constructive possession within the limits of the grant.
We are of opinion that the judge a quo erred in giving plaintiff judgment for any portion of said tracts, to which the defendant had acquired a good title by the prescription of 10 years.
As to the section house and yard inclosed by a fence, and possessed by the defendant for more than 30 years, the judgment in favor of the defendant is clearly correct.
The “flower garden” is an inclosed space between the passenger and freight depots and nearly surrounded by railroad property. The garden was fenced in 1885 or 1886. Pri- or to that time this space had been used for handling baggage and other purposes. This space had been actually used and possessed by the defendant for more than 30 years. A flower garden at passenger stations of any importance is usually provided by up-to-date railroads, and in this testhetic age cannot be deemed foreign to the purposes of such corporations. At any rate, the parterre did not affect the fact of continued possession of the defendant. The judgment properly awarded this space to the defendant.
The property called the “agent’s house,” including the lot, was acquired by an exchange made between the defendant and Moore, the vendor of the plaintiff company, and who is also its president. By this exchange Moore acquired from the defendant another house and lot on the opposite side *851 ■of the track. The contract was executed, and the plaintiff reaped its benefits, being now in possession of the property acquired by Moore in the exchange. The facts of this transaction were frankly admitted by Moore as a witness on the stand. Plaintiff’s objection that this exchange was by verbal agreement, cannot be urged, as the plaintiff is in possession of the fruits of the contract.
On this issue the judgment is correct.
As to the narrow strip of land north of tracks and between them and the little ditch the judgment is erroneous as to such portions of the same as may be included within the limits of the lot 300 by 125 feet adjoining, held by us to belong to the railroad. As to the remainder we think that the judgment in favor of the” plaintiff is correct, as the evidence fails to show continued and uninterrupted possession in the railroad for more than 30 years.
As to the strip south of the freight depot, used as a roadway by the defendant, the owners of the plantation, and the public generally, we think that the judgment in favor of the plaintiff is correct. There can be no question that in 1872 this strip was granted to the defendant by C. D. Cragin, then owner of the plantation. But this grant was never recorded, and while it is referred to in one of the deeds from Charles Morgan, the property is not described, and the recor-dation of this deed simply gave notice that Morgan had purchased from Cragin some piece, tract, or parcel of land as shown by act on file in the office of a certain notary in New Orleans. We do not think that this recital operated as notice to subsequent purchasers. The owners kept this roadway in repair, and its use was necessary for the plantation as well as the railroad. The prescription of 30 years cannot be based on such use of this roadway as is shown by the defendant in this case. It is significant that this strip does not appear on a certain map prepared by the defendant to show its holdings on the plantation. There should be excepted, however, that portion of the Cragin strip which may be inclosed as a part of the Houma Branch line.
The remaining issues present no questions of serious controversy as to facts. As to the land occupied by the Houma Branch line, it was acquired by expropriation proceedings, and there is no dispute as to title or extent of possession. As to the switches, not on any part of the two lots of land acquired by the defendant from Morgan, there seems to be no serious controversy as to the extent of the ground actually occupied by defendant’s tracks and roadbeds, or as to the duration of the possession of the defendant. As to the freight depot, tracks, etc., at the station, possession for more than 30 years is shown in the defendant.
The question of the nature of the defendant’s title to lands actually occupied and used for railroad purposes, we do not consider it necessary to decide in this case. It is a moot question. The railroad’s actual possession repels the action of slander of title, and plaintiff cannot maintain a petitory action to recover the lands so occupied, its remedy being a personal action for their value and damages. St. Julien Case, 35 La. Ann. 924. On the other hand, the defendant cannot maintain a petitory action for lands in its own possession. The action for slander of title applies only to lands in possession of the plaintiff, and as to such lands alone the question of title can be raised by the defendant. After ascertaining what lands are owned or possessed by the defendant, plaintiff will be entitled to a judgment for the excess heretofore claimed by the defendant.
Our conclusions render it necessary to remand the case for the purpose of fixing definitely the lands belonging to or occupied by the defendant in accordance with the views *853 herein expressed. The ease will remain open .for the consideration and determination of matters on which we have expressed no de-cisive opinion.
It is therefore ordered that the, judgment -appealed from be reversed, and that this case •be remanded for further proceedings according to law and the views expressed in the foregoing opinion, and that the costs of this appeal be paid by the plaintiff and defend•ant, one-half each, and that the costs below •abide the final judgment.