127 So.2d 551 (1961)
ESSO STANDARD OIL COMPANY
v.
TEXAS & NEW ORLEANS RAILROAD COMPANY and Ellis Begnaud, et al.
No. 60.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1961.
*552 Davidson, Meaux, Onebane & Donohoe, by Lawrence E. Donohoe, Jr., Lafayette, for defendant-appellant.
A. M. Curtis, Baton Rouge, John P. Everett, and Gene M. Griswold, Shreveport, for plaintiff-appellee.
Willis & Willis, St. Martinville, La., by Earl H. Willis, St. Martinville, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a concursus proceeding instituted by Esso Standard Oil Company to have judicially determined the ownership of certain funds, representing payments attributable to a .011128 royalty interest which have accrued and are accruing from the St. Juste Webre, et al., Well No. 1, located on a thirty-acre tract of land in St. Martin Parish. The ownership of that fund depends upon the determination of the ownership of a 2.17-acre tract which forms a part of the 30-acre tract on which the above mentioned well is located. The claimants of this 2.17-acre tract are the Texas and New Orleans Railroad Company, on the one hand, and the heirs and assigns of Alcide Webre, on the other, all of whom have been made defendants in this suit.
The sole question presented in this appeal is whether a deed, dated June 21, 1906, from Alcide Webre to Morgan's Louisiana and Texas Railroad and Steamship Company, conveyed to the purchaser the full fee simple title to the 2.17-acre tract here in dispute, or whether there was transferred by that deed only a servitude or right-of-way affecting this tract. Defendant, Texas and New Orleans Railroad Company, as the successor in title of Morgan's Louisiana and Texas Railroad and Steamship Company, contends that a fee title was conveyed by that document, while the heirs and assigns of Alcide Webre contend that only a servitude or right-of-way was transferred.
The trial court held that the deed of June 21, 1906, transferred to the purchaser only a servitude or right-of-way, and accordingly judgment was rendered against the appellant, Texas and New Orleans Railroad Company, and in favor of appellees, the heirs and assigns of Alcide Webre, ordering the funds paid to appellees. Texas and New Orleans Railroad Company has appealed from that judgment.
The deed which is the subject of this controversy reads as follows:
"State of Louisiana, | "Be it Known
"Parish of St. Martin } by these
 | Presents:
"That Alcide Webre resident of the Parish and State aforesaid, for and in consideration of Six hundred and ninety seven Dollars, in hand paid and the receipt of which is hereby acknowledged, and for the benefits, enhanced value and other conveniences that are to accrue to the adjacent lands by the construction of a branch line of the Morgan's Louisiana and Texas Railroad, to be constructed across my land from a point on the Mississippi River near Port Allen, Louisiana, in the Parish of West Baton Rouge to the Town of Lafayette, in the Parish of Lafayette, I hereby grant, sell, convey and deliver to the Morgan's Louisiana & Texas Railroad and Steamship Company, *553 a corporation created and organized under the laws of the State and domiciled in the City of New Orleans, its successors, or assigns, a strip of ground One hundred feet wide, for a right of way through, over and across the following described land, situated in the Parish of St. Martin, in section ________, Township Nine south range Five east Louisiana Meridian as indicated by the following sketch or plat, made for the purpose of more properly identifying said location of the said strip for right of way. Said strip of land is to be taken from
"That certain farm situated in St. Martin Parish, La., contg. 35 arpents in area bounded North by public Road, South by property of Alexis Voorhies Eastly that of Ledoux and West by land formerly belonging to Gilbert Delhommeand much better described by the following sketch, viz:

"The above named consideration is accepted in full payment and satisfaction for the land included within said right of way, and also for all damages of every character whatsoever to said property and premises that may be caused by or claimed as the result of the construction and maintenance of said railroad upon said tract of land, and a full discharge and acquittance therefor is hearby granted to the Morgan's Louisiana and Texas Railroad & Steamship Company, its successors or assigns.
"And for the above named consideration Alcide Webre also hereby give and grant to said company, its successors or assigns, the right and privilege to enter upon his lands adjacent to said *554 right of way and deposit thereon timber cut from right of way, and surplus dirt from deep cuts, and to take from adjacent lands and use such amounts of additional dirt as in the opinion of said company may be required to complete and maintain embankments of said Railroad, at points where such cuts and embankments are so heavy as to require such additional space and material it being expressly conditioned that such dirt from cuts and for embankments shall be used in such a manner and so taken as to do the least injury to said adjacent lands, and also the privilege of cutting down all trees along the line of said right of way and outside of its limits, which in falling might reach the track or telegraph and telephone wires.
"This right of way shall be in perpetuity.
"The said Morgan's Louisiana and Texas Railroad and Steamship Company, represented herein by R. Martin, Atty. whose authority as such is hereby fully recognized and acknowledged by parties to this act, hereby accepts the within granted conveyance.
"In witness whereof we have hereunto assigned our names in the presence of D. Rees and A. V. Fournet competent witnesses, on this the 21 day of June A.D. 1906.
"/s/ Alcide Webre
"Morgan La. & Texas RR & SS Co.
"per /s/ R. Martin Atty."
(Emphasis added.)
Although the plat which forms a part of this deed recites that the property affected contains 1.83 acres, the parties have stipulated that it actually contains 2.17 acres, and no question is raised in this proceeding as to the exact area involved.
Prior to the execution of this deed, Morgan's Louisiana and Texas Railroad and Steamship Company instituted expropriation proceedings against Alcide Webre in St. Martin Parish for a "strip of land or right-of-way" affecting the property here in dispute, to be used for the construction of a railroad. The proceeding was instituted under the provisions of Act 37 of 1877, and pursuant to that statute a jury of free-holders was appointed by the court to determine the compensation to be paid the landowners. In due course a report was submitted by the appraisers so appointed, in which a recommendation was made that Alcide Webre be paid the total sum of $697 for the taking and damages. This report was accompanied by a petition filed by the appraisers, praying that:
"The said report be confirmed; that said M. L. & T. R. R. & S. S. Co., be vested with the said rights of way over the following described property, to wit:

* * * * * *

"On and over the land of Alcide Webre of St. Martin Parish, La., containing in all thirty five supl. arpents founded North by public Road, South by land of Alexis Voorhies, East by land of Numa Ledoux and West by land of Gilbert Delhomme, as better appears by sketch and survey thereof on file in this suit.

* * * * * *
"That said M. L. & T. R. R. & S. S. Co., be vested forever with said described rights of way upon the payment, or tender of payment by deposit of the amount of appraisal and damages by the said Company; * * *" (Emphasis added.)
Oppositions to this report were filed by the railroad and by Alcide Webre, the railroad contending that the compensation recommended by the appraisers was excessive, and Webre contending that the amount recommended was inadequate. After a hearing, judgment was rendered on June 21, 1906, decreeing "That said report be and the same is hereby confirmed," and "that the property or right-of-way described *555 in said report * * * are hereby vested in said plaintiffs' company, upon said plaintiffs Company paying or tendering to pay or deposit of the amount of the appraisal and damages by said plaintiffs Company." The plaintiff immediately appealed from that judgment, but the appeal was never perfected because the deed here in question was executed on the same day the judgment was rendered, and thus the issues presented in that case became moot.
Although counsel for appellant contends otherwise, we think Morgan's Louisiana & Texas Railroad & Steamship Company, in the proceedings instituted in 1906, sought to expropriate only a servitude or right-of-way affecting the property here in question, and judgment was rendered awarding it only a servitude. The deed from Webre to Morgan's Louisiana and Texas Railroad and Steamship Company, executed on June 21, 1906, however, was a private act of sale not constituting a part of the expropriation proceeding. The issue presented here, therefore, must be resolved by determining the intent of the parties in executing that deed, and the expropriation proceedings are relevant only insofar as they might indicate what the parties intended to convey by that deed.
The Louisiana Civil Code, LSA, sets out the following rules to be used in interpreting contracts:

"Art. 1948. When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract."

"Art. 1950. When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."

"Art. 1952. Terms, that present two meanings, must be taken in the sense most congruous to the matter of the contract."

"Art. 1956. When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation."
Also, the general rule is that if an instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in construction. Holloway Gravel Co. v. McKowen, 1942, 200 La. 917, 9 So.2d 228; Marcotte v. Coco, 1845, 12 Rob. 167; Bender v. Chew, 1911, 129 La. 849, 56 So. 1023; Smith v. Chappell, 1933, 177 La. 311, 148 So. 242; Plaquemines Oil & Development Co. v. State, 1945, 208 La. 425, 23 So.2d 171.
In Moore Planting Co. v. Morgan's Louisiana & Texas Ry. & S. S. Co., 1910, 126 La. 840, 53 So. 22, 23, the deed there in question was interpreted as conveying only a "right of way." In so holding, the Supreme Court said:
"A `right of way' may consist either of the fee, or merely a right of passage and use; i. e., of a servitude. Whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule, it means only the servitude. * * *"
In Arkansas Improvement Co. v. Kansas City Southern Ry. Co., 1938, 189 La. 921, 181 So. 445, 446, a document in the usual cash deed form purporting to transfer a "lot or parcel of land" was held to convey the fee title, although the words "for additional right-of-way" and "for railroad purposes" were used. The Supreme Court, however, finding that the intention of the parties was not clearly set out in the instrument, relied on extrinsic evidence in order to determine the nature of the rights conveyed. The following significant language was used by the court:

*556 "This deed has all the earmarks of an out-right sale of the land in fee. It recites that the land is `Remised, Released, Quitclaimed and Conveyed' to the railroad company `Forever.' These terms indicate very clearly that the vendor intended to convey a fee title and not merely a right of passage or servitude.
"But following the above language quoted from the instrument is the phrase `for additional right-of-way,' and in the habendum clause is the phrase `for railroad purposes.' The word `forever' is found in the habendum clause immediately following the words `for railroad purposes.' * * *

* * * * * *
"The courts hold generally that a reference to the land involved as `right-of-way' or `for railroad purposes' does not necessarily indicate that the intent was to convey a mere easement or servitude, but that the intention must be ascertained by construing the instrument as a whole, and that in this connection extrinsic evidence may be considered.

* * * * * *
"In the case at bar, the land was granted, not `in perpetuity,' but `forever,' with no stipulation or suggestion that, in case it should cease to be used for railroad purposes, it should revert to the grantor or its successors or assigns.
"In the case at bar, the intention of the parties does not clearly and manifestly appear from the language of the instrument as a whole. But, by construing the instrument in connection with the testimony of Mr. Haight that the grantor had abandoned the property for a period of more than thirty years, during which time no act of ownership was ever exercised, our conclusion is that the judgment of the district court is correct."
In Noel Estate v. Kansas City Southern & Gulf Ry. Co., 1937, 187 La. 717, 175 So. 468, 469, the deed was in the form of the usual cash deed and clearly purported to convey the fee title to the property therein described, except that immediately following the description it was recited that the land was sold for railroad purposes only, that the grant was in perpetuity for so long as it was used for railroad purposes, and that if abandoned for that use then the land should revert to the grantor or his heirs or assigns. In holding that this instrument conveyed only a servitude, the Supreme Court said:
"Returning now to the document, it will be noted that the first paragraph contains the language usually employed in a sale or transfer of the title in fee simple to property. A description of the realty then follows and coupled with it, and only separated from it by a comma, is the clearest and most definite language restricting the use of the land for railroad purposes only. It is stated that `this grant shall be in perpetuity,' which means that the grant is subject to limitation. In other words, when land is conveyed in perpetuity, it is a limited grant and not a sale in fee simple. It is also provided that when the land is abandoned for such use and purpose, it shall revert to the `grantor.' Surely, these clauses are highly restrictive and qualify the previous general language contained in the first paragraph of the instrument. In short, the transaction was a sale or a grant of the property for a specific use and purpose. This is inconsistent with any idea of a sale of the title to the land in fee simple. The former is a restrictive or limited sale or grant and the latter is an outright conveyance of title. In the first instance there is a grant of the use of the land and in the second one, a sale of the land itself." (Emphasis added.)
The deed involved in the case of Rock Island, A. & L. R. Co. v. Gournay, 1943, *557 205 La. 125, 17 So.2d 8, 11, was similar in many respects to the deed in controversy here. The Supreme Court held that only a servitude was conveyed by that deed, the following language being used by the court:
"Counsel for the plaintiff argue that since `the strip of land' was sold and delivered by the granting clause of the deed, the railroad company obtained a fee simple title and the other provisions contained therein were only descriptive of the uses and purposes for which `the strip of land' was to be used by the railroad company.
"The attorneys for the defendants and the intervenor contend that the language of the instrument conveying `the strip of land' was limited and restricted by the phrases `over and upon' and `in perpetuity' and the seven right-of-way clauses appearing therein, as well as the provisions granting the railroad company `the right to change water courses, and to take stone, (etc.), on said right of way for the construction and maintenance of said railroad; * * *" and stating that the consideration in the premises was acknowledged as `receipt in full for all compensation and satisfaction for property taken, or to be taken, and damages done, or to be done, by reason of the construction of said railroad.' Briefly, by taking the instrument as a whole these phrases, clauses, and provisions show that the parties to the deed intended to grant a right of passage, or servitude, or right-of-way `over and upon' the land.

"It is clear that the instrument is not in the usual form of the sale of a fee simple title to land. The granting clause therein is the only one favorable to the plaintiff's position that the sale of the fee simple title to the land was intended. That clause like any other one in the deed can not be isolated and construed alone. But even the granting clause is made uncertain by the presence of the words `in perpetuity' and `over and upon.' If a fee simple title were intended by the parties, these phrases were not necessary. Furthermore, these words are more consistent with a limited grant than a fee simple title, especially in view of the other subsequent qualifying provisions in the deed. The deed literally, from beginning to end, provides for a `right-of-way.' These words appear seven times therein. * * *." (Emphasis added.)
In the Gournay case, the deed recited that the purchaser was granted the right to make cuts, embankments or other works on either or both sides of the right-of-way without the payment of additional compensation. In denying an application for rehearing in that case, the Supreme Court said:
"* * * The grantee and its successors and assigns were granted the right, if they deemed it necessary for the proper construction of the railroad to use this additional land for cuts, embankments and other works without the payment of additional compensation for property taken or damages done. Can it be reasonably stated that it was the intention of the railroad company's representatives to acquire a fee simple title to the 100 foot strip of land and merely a servitude or right of way to the additional 50 foot strip on each side of the main grant of right of way? We do not think so. The provisions in the deed negative any such idea." 205 La. 164, 17 So.2d 21, 22.
The deed here at issue, as did the deed in the Gournay case, purports to grant to the purchaser the right to enter lands "adjacent to said right of way" and deposit thereon timber and surplus dirt "cut from right of way" and to take additional dirt from adjacent lands to complete and maintain embankments of the railroad. In view of that provision in the deed, and for the *558 reasons assigned in the Gournay case, it appears to us that it would be unreasonable to conclude that in the transaction completed on June 21, 1906, Morgan's La. & Texas Railroad & Steamship Company intended to acquire the fee title to the 100-foot strip of land described in that document and a servitude on the adjacent lands.
Counsel for appellant points out that the deed executed by Alcide Webre purports to convey to the purchaser "a strip of ground one hundred feet wide," and he argues that this language shows that the parties intended that the fee title was to be conveyed. We note, however, that immediately following this phrase are the words, "for a right of way through, over and across" the property therein described, which language appears to us to be inappropriate if the parties intended to transfer full title, but is consistent with an intent to convey a servitude. It is further pointed out, as indicating that a fee title was to be conveyed, that the grantor in that deed acknowledged that the consideration was "for the land included within said right of way." Following that provision, however, is an acknowledgment by the grantor that the consideration also was "for all damages of every character whatsoever to said property and premises that may be caused by or claimed as a result of the construction and maintenance of said railroad upon said tract of land." By this statement the parties obviously intended to refer to damages to adjacent property. Such a provision, however, while common in right-of-way deeds, is rarely used when the fee title is conveyed.
The deed involved here recites that, "This right of way shall be in perpetuity." By that statement the parties specifically referred to the property or rights granted as a "right of way." Although counsel argues that "perpetuity" means the same thing as the word "forever," which is ordinarily used in cash deeds, the Supreme Court has observed that the use of the word "perpetuity" in a conveyance indicates a limited grant and not a sale in fee simple. Noel Estate v. Kansas City Southern & Gulf Ry. Co., supra; Rock Island, A. & L. R. Co. v. Gournay, supra.
The document executed by Alcide Webre on June 21, 1906, was not in the usual form of a cash deed. It did not contain the "habendum" clause customarily used in acts of sale, no mention was made of whether the sale was made with or without warranty of title, and there was no subrogation of rights and actions in warranty against former owners. While these provisions may not have been essential to the validity of the sale, the fact that they were not included in a transaction of this kind where all parties were represented by counsel is some indication that they did not intend for that document to be a sale conveying the fee title to the property therein described. The term "right of way" is used at least seven times in the body of the deed, and it is used twice in the plat which forms a part of that document. It would be illogical to assume that the parties would have made such frequent use of that term, and would have used it in the manner above shown, if they actually intended to convey the fee title to the property rather than a right-of-way.
The consideration recited in this deed is the same as that recommended by the appraisers appointed by the court in the expropriation proceeding. This indicates to us that by that deed Alcide Webre intended to sell and the railroad company intended to purchase the same rights as were awarded by the court in those proceedings. We have already concluded that only a servitude was awarded to plaintiff in that action.
We find no merit to appellant's argument that the amount of the consideration recited in the 1906 deed shows that the parties intended to transfer the fee title rather than a servitude. The consideration paid was the same as that recommended by the appraisers, and, as has already been pointed out, we are convinced that these appraisers intended to fix the value of a servitude or right of way affecting this property, as *559 well as the damages to grantor's remaining property resulting from the taking.
The language used in the deed dated June 21, 1906, and a review of the expropriation proceedings which were concluded just prior to the execution of that deed, convinces us that the purchaser in that deed acquired only a servitude affecting and relating to the property therein described. In our opinion, therefore, the judgment rendered by the trial court was correct.
For the reasons herein set out, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant.
Affirmed.