146 So.2d 530 (1962)
SOHIO PETROLEUM COMPANY, Plaintiff and Appellee,
v.
Anes W. HEBERT et al., Defendants and Appellants.
No. 649.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
Rehearing Denied November 28, 1962.
*531 Porter & Scofield, by John B. Scofield, Lake Charles, for defendants-appellants.
George W. Liskow, Lake Charles, for defendants-appellees.
Liskow & Lewis, by Richard E. Gerard, Lake Charles, for plaintiff-appellee.
Before TATE, SAVOY and HOOD, JJ.
HOOD, Judge.
This is a concursus proceeding instituted by Sohio Petroleum Company to have judicially determined the ownership of certain funds which have been and are being deposited in the Registry of the Court, representing payments attributable to a royalty interest accruing from two gas production units located in Calcasieu Parish, Louisiana. Plaintiff is and has been the unit operator for these gas production units, and as such it has been receiving the proceeds from the sale of the gas and condensate produced from them. The claimants are the Sweet Lake Land and Oil Company (Sweet Lake), on the one hand, and the heirs and assigns of Ducre Hebert (hereinafter referred to as the "Hebert Group"), on the other, all of whom have been made defendants in this suit.
The ownership of these funds depends upon a determination of the ownership of the fee title to strips or parcels of land underlying a canal and public road, and which allegedly were excepted from the sale and reserved to the vendor in a deed from North American Land and Timber Company to Ducre Hebert, dated January 18, 1918. Sweet Lake is the successor in title to North American Land and Timber Company, and the Hebert Group are the heirs and assigns of the purchaser in that sale.
After trial on the merits, the trial court held that in that deed the vendor, North *532 American Land and Timber Company, had excepted from the sale and retained only a servitude for canal and road purposes, and that the fee title to all of the land described in that deed was conveyed to the purchaser, Ducre Hebert. Accordingly, judgment was rendered in favor of the Hebert Group, decreeing them to be the owners of the funds which are here in dispute. Sweet Lake has appealed from that judgment.
The deed executed by North American Land and Timber Company in 1918 purports to convey to the purchaser, Ducre Hebert, the following described property:
The west half of the southwest quarter (W ½ of SW ¼) less right of way for canal and public road on the west and south sides of section twenty eight (28) in township ten (10) South of range six (6) west of the Louisiana Meridian, lying and being in Calcasieu Parish, Louisiana and containing seventy seven and fifty one hundredths (77.50) acres be the same, more or less, southwest Louisiana Meridian, Together with improvements thereon and all rights, ways, privileges, servitudes and appurtenances thereunto belonging or in any wise appertaining. (Emphasis added and minor typographical errors corrected.)
The specific question presented is whether the words, "* * * less right of way for canal and public road on west and south sides * * *," as used in the deed, actually had the effect of excepting from the sale and reserving to the vendor the fee title to those portions of the West Half of the Southwest Quarter of Section 28 which were then being used for canal and public road purposes. Sweet Lake contends that the property on which the canal and the road were located, and which they maintain comprises 4.86 acres, was never conveyed by that deed, but that the fee title to those strips of land was retained by the vendor. The Hebert Group, on the other hand, contend primarily that the purported reservation or exception was so vague and indefinite that no title or rights of any kind were reserved to or retained by the vendor in that deed; and, in the alternative, they contend that the vendor, at most, retained or excepted from the sale only a servitude for canal and public road purposes and that the fee title to all of the land included in the West Half of the Southwest Quarter of that section was conveyed to the purchaser.
The reservation of a "right of way" for a canal or public road may constitute the reservation either of the fee title or of a servitude. Whether the one or the other is meant in a particular instrument must be gathered from a consideration of the instrument as a whole. We think, however, that the use of the term "right of way" in a deed usually indicates that only a servitude or a right of passage is being conveyed or reserved, and that it should be construed as meaning only a servitude unless the instrument, considered as a whole, indicates that the parties intended for it to mean the fee title. John T. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., 126 La. 840, 53 So. 22; Texas & Pac. Ry. Co. v. Ellerbe, 199 La. 489, 6 So.2d 556; Persigo v. Johnson & Co., La.App., Orl., 18 So.2d 186; Bonnabel v. Police Jury, 216 La. 798, 44 So.2d 872; Esso Standard Oil Co. v. Texas & New Orleans R. Co., La.App. 3 Cir., 127 So.2d 551.
In John T. Moore Planting Co. v. Morgan's Louisiana & T. R. & S. S. Co., supra, the Supreme Court said:
"A `right of way' may consist either of the fee, or merely of a right of passage and use; i. e., of a servitude. Whether the one or the other is meant in any particular instrument must be gathered from the instrument as a whole. As a general rule, it means only the servitude * * *. A most significant circumstance in the present case is that no width is assigned to this `right of way.' If a strip of land running across the plantation had been intended to be conveyed, the parties would hardly have failed to specify its *533 width." (P. 32 of 53 So. Emphasis added.)
In Texas & Pac. Ry. Co. v. Ellerbe, supra, where the issue of title was resolved entirely from the recitals contained in the deed, the Supreme Court said:
"The jurisprudence is well settled that the conveyance of a right of way is to be regarded as a mere servitude and not as a transfer of a fee-simple title of the land unless the deed itself evidences that the parties intended otherwise." (P. 557 of 6 So.2d).
And, in Esso Standard Oil Co. v. Texas & New Orleans R. Co., supra, where a "right of way" was conveyed "in perpetuity" for railroad purposes, we held that only a servitude had been conveyed, although we think the party claiming fee title under the facts presented in that case was in a more favorable position to do so than is Sweet Lake in this case.
The Hebert Group argue that the purported reservation was ineffective and invalid, because it does not set out the exact location of the strips of land allegedly reserved or excepted from the sale. They further point out that, in any event, the use of the term "right of way" shows that only a servitude or easement was intended to be reserved.
Sweet Lake, on the other hand, contends that the use of the words "less right of way * * *," instead of "subject to" such right of way, shows that the canal and road were excepted completely from the sale. Also, our attention is called to the fact that the deed provides that the property therein conveyed includes all "rights, ways, privileges, servitudes and appurtenances thereunto belonging," and it is argued that such a stipulation would be inconsistent with the position taken by the Hebert Group that a servitude only had been reserved for the canal and public roads. To adopt the reasoning of the Hebert Group, counsel for Sweet Lake argues, would be to conclude that the vendor in the 1918 deed reserved a servitude in one breath and gave it away in the next.
The deed involved in the instant suit, considered as a whole and in the light of the arguments advanced by both claimants, indicates to us that the vendor intended to reserve from the sale only a servitude for a canal and a public road on the west and south sides of the property therein conveyed. We have been influenced in arriving at that decision by the fact that the term "right of way" was used, and that the dimensions of the right of way purportedly reserved or excepted from the sale were not given in the deed. It seems to us that if the vendor had intended to reserve the fee title to these strips of land, the term "right of way" would not have been used, and the dimensions of the property so reserved would have been described with exactness.
The general rule is that if an instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in construction. Esso Standard Oil Co. v. Texas & New Orleans R. Co., supra. In the instant suit, both of the claimants have introduced extrinsic evidence to support their respective positions. While the language used in the deed indicates to us that the parties intended that only a servitude was excepted from the sale, and accordingly that extrinsic evidence should not be considered, we find it unnecessary to rule on the admissibility of such evidence because, even if the extrinsic evidence should be considered, we are convinced that it does not show that the parties had any other intent.
A government plat produced by Sweet Lake shows that Section 28 contains 658.89 acres. By mathematical computation, Sweet Lake reasons that the West Half of the Southwest Quarter of that section contains 82.36 acres. It is argued that since only 77.50 acres were conveyed to the purchaser by the deed here in question, the vendor obviously reserved 4.86 acres out of *534 the West Half of the Southwest Quarter of that section to itself. Sweet Lake contends that this is the amount of acreage included in the canal and road, and that shows that the fee title to the canal and road was reserved by the vendor.
As proof of the acreage contained in the canal and road, Sweet Lake relies on an unsigned notation found among the records of North American Land and Timber Company, which notation indicates that the road and canal consisted of 4.86 acres and that the remaining 77.50 acres were sold to the purchaser for a price of $20.00 per acre. The Hebert Group strenuously objected to the introduction of this notation or document in evidence, but the trial judge, without ruling on the admissibility, merely held that the document did not support Sweet Lake's contention that the vendor in that deed had reserved the fee title of the land underlying the canal and road. We agree with the conclusion which was reached by the trial judge. Neither that document, nor any other evidence which we find in the record, establishes the dimensions, the area or the boundaries of the canal and road, nor does any of such evidence establish that the vendor in the 1918 deed excepted the fee title of the canal and road from the sale.
We find no merit to the argument that Ducre Hebert bought and paid for only 77.5 acres of land, and that "his successors in title could receive no more." The deed recites that the property conveyed contains 77.50 acres "more or less," these words indicating to us that the acreage was given merely to assist in identifying the property and not to qualify or limit the sale to that exact quantity of land. Also, the rule is well settled in our jurisprudence that a description of land in terms of quantity is one which "yields to every other method." W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184; Dufrene v. Bernstein, 190 La. 66, 181 So. 859. Here we think the description of the property by reference to section lines should control in case there is a conflict between that part of the description and the approximate number of acres in the property conveyed.
The evidence also establishes that since 1918 the West Half of the Southwest Quarter of Section 28 has been assessed to Ducre Hebert, or his heirs or assigns, and they have paid taxes on that property continuously since that time. In these assessments no exception or reference of any kind is made as to the canal or road. Neither North American Land and Timber Company, nor any of its successors in title, have been assessed with any part of the West Half of the Southwest Quarter of that section since that time and they have paid no taxes on it. It is true that Sweet Lake has been assessed for its entire canal system, but in the assessment there is no mention of the land here in dispute. We think North American Land and Timber Company would have had these particular parcels of land assessed to it following the 1918 sale if it, in fact, had intended to retain fee title to them.
On March 5, 1920, North American Land and Timber Company conveyed to North American Land Company, Inc., all of the "Rights of Way of the Indian Bayou Canal," including, among many other similar descriptions, a "Right of way fifty feet wide along the west side" of said Section 28. And, by deed dated November 9, 1928, the North American Land Company, represented by H. G. Chalkley, its president, conveyed to the Sweet Lake Land and Oil Company, Inc., among other property rights, a "Right of way fifty feet wide along the west side" of that section. The use of the term "Right of way" in each of these documents indicates to us that the parties intended that only a servitude was being conveyed. We feel certain that if the purchaser in each of those sales had actually intended to acquire the fee title to this strip of land, it would have described the property as a "strip," a "parcel," or a "tract" of land, or by some term other than "right of way," which commonly is regarded as meaning a servitude only.
*535 The evidence also shows that on January 2, 1935, the late H. G. Chalkley, who was then president of Sweet Lake and also president of North American Land Company (the immediate predecessor in title of Sweet Lake), purchased or acquired, individually and as lessee, an oil, gas and mineral lease affecting the "W ½ of SW ¼ of Section 28, Township 10 South, Range 6 West," from the then owner. No mention was made in that lease of the fact that a right of way for canal or public road had been reserved, and this indicates to us that the president of Sweet Lake, at that time at least, apparently did not feel that his company owned the fee title to any part of the property affected by that lease.
Among the facts which courts have considered in deciding the question herein presented, including those properly established by extrinsic evidence, are the following: (1) the consideration recited in the deed; (2) whether or not a specific measurement is given to the "right of way;" (3) whether or not the party claiming the fee title had an actual need for such title; (4) to whom the property was assessed and who paid the taxes on said property; (5) whether or not the grant was made for a specific purpose; (6) whether or not the grant is made "in perpetuity," or "forever," and (7) how the parties to the conveyance, or their heirs and assigns, have treated the property.
In this case it has already been pointed out that no specific measurement has been given of the "right of way." The trial judge concluded that the vendor in the deed did not need the fee title to the land underlying the canal and the road, but that a servitude would serve the purpose just as well. The disputed property has been assessed to the Hebert Group continuously since 1918, and they have paid all taxes on it. No part of the disputed property has been assessed to Sweet Lake, or its predecessors in title, and they have not paid taxes on it since 1918. The reservation does not specify that it is "in perpetuity" or "forever," and it appears that the president of Sweet Lake, who should have been in a position to know the attitude of that company, at one time at least, did not consider that his company owned the fee title. In view of all of these facts, even if the extrinsic evidence should be considered, we agree with the conclusions reached by the trial court that "the preponderance of the extrinsic evidence introduced at the trial of this case is in favor of the position of the Hebert Group."
For the reasons herein set out, therefore, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Sweet Lake Land and Oil Company, Inc.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.