361 So.2d 974 (1978)
Lula Mae MEAUX, Plaintiff-Appellee,
v.
SOUTHDOWN LANDS, INC., Defendant-Appellant.
No. 6594.
Court of Appeal of Louisiana, Third Circuit.
August 4, 1978.
*975 Silas B. Cooper, Jr. of Cooper & Sonnier, Abbeville, for defendant-appellant.
Broussard, Broussard & Moresi by Marcus Broussard, Jr., Abbeville, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
DOMENGEAUX, Judge.
This is a suit for a declaratory judgment brought by plaintiff in order to have determined the effect of two instruments affecting land situated in Vermilion Parish.
Plaintiff, Lula Mae Meaux, is currently the owner of two adjacent parcels of land through which a canal, operated by defendant,[1] Southdown Lands, Inc., runs. The canal was constructed in 1925. At the time of construction, the land was owned by two separate landowners, Leon Broussard and Davie Meaux, with whom Mr. A. Kaplan, representative of one of Southdown's predecessor companies, the Hunter Canal Company, negotiated. Separate agreements were entered into by Kaplan with each of the landowners.
Several years later, Davie Meaux purchased the Broussard tract. Plaintiff is Meaux's daughter, and she acquired both tracts from her father by donation inter vivos and dation en paiement.
Involved in this controversy is the effect of the 1925 documents executed by Kaplan, with Davie Meaux, and with Leon Broussard. Plaintiff alleges that these documents conveyed only a servitude of right of way. Defendant, on the other hand, contends that the documents conveyed fee title of the land upon which the canal is situated.
The trial court found that the document executed between Kaplan and Meaux conveyed ownership of the property, but that the document executed between Kaplan and Broussard conveyed only a servitude of right of way. He also overruled exceptions of no cause of action and acquisitive prescription brought by defendant. Judgment was rendered accordingly. Costs were assessed one-half to the plaintiff and one-half to the defendant. Defendant appeals. Plaintiff answers the appeal contending error in that portion of the judgment which found that the Kaplan to Meaux document conveyed ownership of the land and which assessed her for half of the costs. We affirm.
At the outset, we will dispose of defendant's contentions concerning error in the overruling of its exceptions of no cause of action and acquisitive prescription. We note that although the specification of errors listed in defendant's brief includes the failure of the trial court to sustain both exceptions, defendant has not argued the issue in his brief or during oral argument. However, we feel that the following comments are appropriate.
With regard to the exception of no cause of action, this suit was brought to declare the effects of the 1925 deeds entered *976 into between Kaplan and Meaux, and Kaplan and Broussard. As such it falls within the express provisions of Article 1872 of the Louisiana Code of Civil Procedure.[2] Hence, the trial judge was not in error by failing to sustain this exception.
With regard to acquisitive prescription, we note that this is an action for a declaratory judgment on the construction of two instruments and not a petitory action. Plaintiff is only seeking a determination of the effect of the two instruments. Therefore, the exception of acquisitive prescription is not appropriate at this time.
We now move to the major issue of the case, viz. the interpretation of the two documents in question.
The Meaux-Kaplan document was executed on January 24, 1925, before A. Oliver Landry, Notary Public. It consists of a printed form captioned "CASH DEED," by which Davie Meaux agreed to sell to A. Kaplan, property described as follows:
"A certain strip of land situated in the Parish of Vermilion, Louisiana, measuring One Hundred (100) Feet wide, east and west, by the full depth of the Northwest Quarter of the Southwest Quarter of Section 8 in Tp. 12, S.R. 3 East, and to be taken on the western portion of said Northwest Quarter of Southwest Quarter of said Section 8 in Tp. 12, S.R. 3 East.
Said strip herein conveyed being bounded north by Zarilda Harrington, south by Leon Broussard, east by Davie Meaux and west by Public Road."
The document recites that the property was sold with full legal warranties, and with full guarantee against "all troubles, debt, mortgages, claims, evictions, donations, alienations or other encumbrances.. . ." It expressly warrants title and subrogates to the vendee all rights of warranty held by the vendor. The stated consideration was $300.00. The following stipulation, typed into the document, appears at its end:
"It is agreed and understood by the parties hereto that the said A. Kaplan, vendee herein, shall, at the request of the vendor herein, build, or cause to be built or constructed over the strip of land, or right of way herein conveyed, at a place to be designated by the vendee herein, a bridge of sufficient width and strength for the ordinary purposes of traffic.
It is agreed that said bridge is to be constructed as above set forth by the said A. Kaplan, or his assigns or successors."
The Broussard-Kaplan document was entered on February 28, 1925, before the same Notary, A. Oliver Landry. It also consists of a printed form; however, it is captioned "CANAL RIGHT OF WAY," and its wording is slightly different from that used in the Meaux-Kaplan document. The instrument recites that Leon Broussard sells to A. Kaplan the following property:
"In the Ninth Ward of the Parish of Vermilion, Louisiana: A strip of land Eighty (80) feet wide, lying forty (40) feet on each side of a line described as follows: Beginning at a point twenty feet East of and forty feet South of the Northwest corner of the South Half of South West Quarter of Section Eight (8), Township Twelve (12) South, Range Three (3) East, and running East along and parallel to the North boundary of the said tract 2,122 feet; thence South a distance of 1,277 feet to the South side of said tract, or to middle of the Public Road; all within the aforesaid tract, and containing about six (6.00) acres.
Said strip of land forming a part of a continuous right of way for an irrigation canal."
The document states that the property was sold with all legal warranties, and also subrogates to the vendee all rights of warranty *977 held by the vendor. The consideration is stated as follows:
"This sale and transfer is made and accepted for the purpose of making possible the construction of an irrigation canal through the property above described and in consideration of the construction of said canal and of the benefits to be derived by the vendor from the construction and operation of said canal."
On their face, both instruments appear to be acts of sale conveying ownership of land. However, the inartful inclusion of the term "right of way" in the final stipulation of the Meaux-Kaplan document, and in the description of land in the Broussard-Kaplan document has clouded the issue.
The term "right of way" may be used to convey either a servitude of passage or fee title of the land. Whether a servitude or fee title is meant must be determined from an examination of the instrument as a whole. Generally, however, "right of way" means only a servitude. Moore Planting Co. v. Morgan's Louisiana & T.R. & S.S. Co., 126 La. 840, 53 So. 22 (1910); Damson Oil Corporation v. Sarver, 346 So.2d 1304 (La.App. 3rd Cir. 1977), writ refused 350 So.2d 896 (La.1977); Sohio Petroleum Company v. Hebert, 146 So.2d 530 (La.App. 3rd Cir. 1962), writ refused 243 La. 1004, 149 So.2d 763 (1963); Esso Standard Oil Company v. Texas & New Orleans Railroad Company, 127 So.2d 551 (La.App. 3rd Cir. 1961).
Having examined the documents as a whole, and finding them sufficiently ambiguous to leave in our minds doubt as to exactly what the parties intended, we turn to an examination of extrinsic evidence. C.C. Art. 1956. Sohio Petroleum Company v. Hebert, supra; Esso Standard Oil Company v. Texas & New Orleans Railroad Company, supra.
Our task of examining extrinsic evidence has been made somewhat lighter by our decision in Sohio Petroleum Company v. Hebert, supra, wherein seven criteria, including those which are usually established by extrinsic evidence, necessary to a determination of whether a servitude or fee title is conveyed in situations similar to the instant case were set forth. They are:
1. Consideration recited in the deed;
2. Whether a specific measurement is given to the "right of way;"
3. Whether the party claiming the fee title had an actual need for such title;
4. To whom the property was assessed and who paid the taxes on the property;
5. Whether the grant was made for a specific purpose;
6. Whether the grant is made "in perpetuity" or "forever;" and
7. How the parties to the conveyance, or their heirs and assigns, have treated the property.
We will now compare the evidence in this case to each of these criteria for both documents.

CONSIDERATION RECITED IN THE DEED
The Meaux-Kaplan document provided for a consideration of $300.00 for the approximately three acres of land affected. The Broussard-Kaplan document does not specify a cash sum. However, the document does state that the consideration for the 6 acres of land affected was the construction of an irrigation canal.
We note, however, that actually the equivalent of $150.00 in rice was paid by Kaplan to Broussard, although this is contained in a separate instrument and not in the deed itself. This ancillary document reads as follows:
"In consideration of Leon Broussard deeding this day to A. Kaplan, a right of way along part of his north line and also through his land, situated in the Ninth Ward of Vermilion Parish, Louisiana, measuring 80 feet wide, and forming about six (6) acres of land; the said A. Kaplan hereby obligates himself, his heirs or assigns, to pay in rough rice of his crop of the year 1925, when harvested, at the market price for said rice at the time of harvest, the sum of One Hundred and *978 Fifty ($150.00) Dollars; the price of said rice to be governed by the market price prevailing at Abbeville, La., at the time of delivery for such grade and variety of rice given in payment." [Italics added]
Of particular interest is the fact that the italicized language indicates that only a servitude of right of way was granted, because in addition to expressly stating "right of way," the land is described as belonging to Broussard. Also of interest is the disparity in the dollar values received by Meaux and Broussard in the respective transactions. Meaux received $300.00 for his transaction involving approximately 3 acres of land; whereas Broussard received $150.00 for his transaction involving approximately 6 acres of land.

SPECIFIC MEASUREMENT
Both instruments in question contain specific measurements of the property and descriptions of the land.

WHETHER THE PARTY CLAIMING FEE TITLE HAD AN ACTUAL NEED FOR SUCH TITLE
It is obvious from both the property description in the Broussard-Kaplan document and the final stipulation of the Meaux-Kaplan document, that the building of an irrigation canal was anticipated by all parties. Kaplan, therefore, needed only to acquire a servitude of right of way. Full ownership of the land was not necessary.

ASSESSMENT AND TAXES
In 1924, the assessment for the Broussard and Meaux tracts consisted of 80 acres and 40 acres, respectively. The assessment for the Meaux tract in 1925 was only for 37 acres. Thus, a reduction of 3 acres for the portion purportedly sold to the canal company was shown. However, the assessment for the Broussard tract in 1925 remained at 80 acres and did not reflect the reduction for the approximately 6 acres affected by the Broussard-Kaplan document.
However, when Meaux subsequently purchased the Broussard tract from Broussard in 1937, the assessment was changed to 73.30 acres, apparently reflecting the approximate 6 acres affected by the Broussard-Kaplan document. The assessment was again changed in 1949 when Meaux's daughter, plaintiff herein, acquired both tracts from her father. For some unexplained reason, the assessment on the original Meaux tract was decreased to 34 acres. However, in 1958, the assessments for both the original Meaux tract and the original Broussard tract were increased to 40 acres and 80 acres, respectively. In 1961, the tracts were lumped together to provide for an assessment of 120 acres. In 1963, for an unexplained reason, the acreage was increased to 160 acres.
With regard to defendant's tax records, the Vermilion Parish Police Jury passed a resolution in 1925 exempting the canal from taxation for 10 years. The first assessment came in 1937, and it appears that defendant and its predecessors have been assessed for taxes on their canals from that time until the date of the filing of this suit.

WHETHER THE GRANT WAS MADE FOR A SPECIFIC PURPOSE
The Meaux-Kaplan document contains no language which would indicate that the conveyance was made for a specific purpose. There is no limiting language in the instrument, except for the final stipulation which provides for the construction of a bridge. This of course would indicate the anticipation of the construction of an irrigation canal. However, at no place in the instrument is there language which limits the use of the land.
On the other hand, the Broussard-Kaplan document expressly states the following:
"This sale and transfer is made and accepted for the purpose of making possible the construction of an irrigation canal through the property above described.. . ."
There can be no doubt, therefore, that the purpose of this conveyance was the construction of an irrigation canal.

*979 WHETHER THE GRANT IS MADE "IN PERPETUITY" OR "FOREVER"
This factor is significant because it has been indicated in the jurisprudence that a grant "in perpetuity" connotes only a limited grant and not a sale in fee simple; whereas a grant "forever" connotes an unlimited grant and a sale in fee simple. Noel Estate, Inc. v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468 (1937); Esso Standard Oil Company v. Texas & New Orleans Railroad Company, supra.
Here, both instruments expressly state that the grant is forever.

HOW THE PARTIES TO THE CONVEYANCE, OR THEIR HEIRS AND ASSIGNS, HAVE TREATED THE PROPERTY
The first document to which we look under this criterion is the sale of the Broussard tract from Broussard to Meaux in 1937, which is included in the record. The instrument describes the property sold as follows:
"One certain tract of land lying and being situated in the Ninth Ward of Vermilion Parish, Louisiana, containing seventy-three and 30/100 acres, more or less, and being designated as the South Half of Southwest Quarter of Section eight, Township twelve south, range three east, after deducting therefrom rights of way for irrigation and roads, being bounded on the North by Irrigation Canal and Amelie Castro, South by Public Road, East by Public Road and West by Public Road. Together with all buildings and improvements thereon situated or thereto."
We think it significant that Broussard, an original party to the Broussard-Kaplan document, specified that the land only contained 73.30 acres, instead of the original 80 acres owned prior to the execution of the Broussard-Kaplan document. However, it should be noted that when Meaux conveyed the Broussard property to his daughter in 1949, the instrument purported to convey 80 acres.
The record also contains extensive evidence of acts of ownership exercised by defendant or its predecessors. In 1939, a mineral lease was granted on the property by the Hunter Canal Company to the Continental Oil Company and the Republic Production Company. In 1960 a pipeline servitude was granted to the Riverside Oil Company by Acadian-Vermilion Rice Irrigating Company, Inc., one of defendant's predecessor companies, on the canal in the Broussard tract. Also in 1960 there was a compromise agreement and amendment between Continental Oil and Acadian-Vermilion Rice Irrigating Company, relative to the original 1939 lease mentioned above. In 1962 Acadian-Vermilion Rice Irrigating Company granted another pipeline servitude on the Broussard tract to the Continental Pipeline Company. Finally, the record in this case contains a 1965 Conservation Order in which Acadian-Vermilion Rice Irrigating Company is shown to have been allocated mineral production royalties for a unit, including a portion of the canal, partially situated on the Broussard tract.
After reviewing the evidence and the law in this case, we reach the following conclusions. With regard to the Meaux-Kaplan document, we think that the trial court was correct in its finding of a sale of the property in fee simple. The instrument is captioned "CASH DEED." The assessment on the property was changed from 40 acres to 37 acres immediately after its execution. Furthermore, the instrument contains no language, other than that contained in the final stipulation, which would indicate that merely a servitude instead of fee title was intended to be conveyed. Looking to the totality of the circumstances, we feel that the factors lean toward a finding of an intent to convey fee title.
With regard to the Broussard-Kaplan document, we feel that the trial court was also correct in finding that this conveyed a servitude. The document is captioned "CANAL RIGHT OF WAY." The property description contains language which attempts to limit the use of the property, and the instrument expressly states that the purpose of the conveyance was to construct an irrigation canal. The separate agreement *980 by which Kaplan agreed to pay to Broussard $150.00 in rice clearly refers to the land as Broussard's and states that it was given for the granting of a right of way. Looking to the totality of the circumstances, we feel that the factors lean toward a finding of an intent to convey a servitude.
We are well aware that there are factors surrounding both documents, especially the Broussard-Kaplan document, which could be used to argue positions contrary to those reached by the trial judge and by us. The questions are extremely close. The criteria involved in cases of this sort simply are not subject to precise comparisons. Having examined the documents, in light of the other evidence contained in the record, we cannot say that the trial court was erroneous in its conclusions, and, therefore, we affirm.
The final matter to be disposed of is the assessment of costs one-half to plaintiff and one-half to defendant. The assessment of costs rests within the discretion of the trial court. Louisiana Code of Civil Procedure Article 1920. Considering the outcome of this suit, we cannot say that the trial judge abused his discretion.
For the above reasons the judgment of the district court is affirmed at defendant's costs.
AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[1] Actually, plaintiff joined as defendants all parties alleged to have mineral interests in the subject property. These parties did not actively participate in the suit. For simplicity, we will refer only to the primary defendant, Southdown Lands, Inc., throughout this opinion.
[2] Article 1872 provides:

"A person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."