HOOD, Judge.
Mrs. Marie Ney Maddox instituted this suit against her daughter, Mrs. Cornelia Ney Maddox Vanlangendonck, for a declaratory judgment decreeing plaintiff to be the owner of a tract of land in the City of Alexandria, Louisiana. Judgment was rendered by the trial court rejecting plaintiff’s demands and dismissing the suit. Plaintiff appealed.
The issues presented are (1) whether plaintiff has acquired title to the subject property by acquisitive prescription of 30 years; and (2) alternatively, whether the purported sale of that property to defendant, Mrs. Vanlangendonck, constituted a donation omnium bororum, which is null under the provisions of LSA-C.C. art. 1497.
The property involved in this suit comprises 1.279 acres. It has a frontage of 137.5 feet on the north side of MacArthur Drive, the east line of the property extending to a depth of 300.4 feet along Betty Street, its west line extending to a depth of 315.6 feet from MacArthur Drive, and the north line of the property being 136.65 feet long.
Plaintiff was born in 1891, and she thus was 84 or 85 years of age at the time of the trial. She was married to the late *740 Robert G. Maddox, and of that marriage seven children were born, one of whom is Bettie Maddox (now Mrs. Bettie Maddox Texada), and another is defendant, Mrs. Vanlangendonck.
In December, 1941, Mr. and Mrs. Maddox began constructing a house on the above property, and they moved into that house with their youngest son later that month. They lived together on that property until the death of Mr. Maddox on October 12, 1943. Mrs. Maddox has continued to live on the property since her husband’s death, except for a period of about one month when she rented the house to a tenant.
Shortly before plaintiff and her husband moved on the property, Mr. Maddox entered into a verbal agreement with Sireno E. Bowers, in which Maddox agreed to purchase from Bowers a tract of land containing more than seven acres in the City of Alexandria, having a frontage of about 300 feet on U. S. Highway 71 (now MacArthur Drive) by a depth of about 1108 feet. The land affected by that verbal agreement included the property which is in dispute here. On December 23, 1941, Bowers entered into a written contract with Bettie Maddox, one of plaintiff’s daughters, under the terms of which Bowers agreed to sell to Bettie Maddox, and the latter agreed to buy, a part of the land which Bowers previously had verbally agreed to sell to Mr. Maddox. In that agreement Bettie Maddox agreed to make payments monthly to apply on the purchase price and Bowers agreed to deliver to her a warranty deed for the property upon payment of the full price. We consider that agreement to be a “bond for deed contract.” See LSA-R.S. 9:2941. After it was entered into, numerous payments were made on the purchase price of the property.
Bettie Maddox (now Mrs. Texada) testified that she entered into the bond for deed contract with Bowers at the request of her father, because Mr. Maddox owed some debts and he was afraid that his creditors might attempt to execute on the property if title was vested in his name.
The record does not contain all of the deeds or written contracts which were executed relating to the property Mr. Maddox agreed to purchase from Bowers, although it does contain those which are essential for a disposition of this case. The evidence makes it clear, however, that Bowers and Bettie Maddox entered into written agreements providing that Bowers would sell all of that property to Bettie Maddox, that the agreed purchase price was paid to Bowers and that the latter executed several deeds conveying that property to defendant, Mrs. Vanlangendonck, instead of to Bettie Maddox. We find that after the agreed purchase price was paid to Bowers, the interested parties decided that it would be advisable to vest title in Mrs. Vanlan-gendonck, instead of in Bettie Maddox, because they feared that the latter’s first husband, Mr. Merritt, from whom she was then divorced, might claim on interest in the property. It is for that reason that Bowers conveyed title to Mrs. Vanlangen-donck instead of to Bettie Maddox.
On May 20, 1942, Bowers executed a deed conveying to Mrs. Vanlangendonck a strip of land having a frontage of 50 feet on U. S. Highway 71, being a part of the property which he had orally agreed to sell to Maddox. The sale was made on credit, and the purchaser, Mrs. Vanlangendonck, executed five promissory notes evidencing the balance due on the purchase price, together with a vendor’s lien affecting the property to secure the payment of those notes.
By warranty deed dated October 11, 1943, Bowers sold and conveyed to Mrs. Vanlangendonck two additional strips of land, being the remainder of the property which Maddox had agreed to purchase from him. Bettie Maddox, who by that time had remarried and was then the wife of James R. Texada, also joined Bowers in executing the last mentioned act of sale as *741 a vendor. The deed recites that Bettie Maddox “owned an interest in the property . . . before her marriage to James R. Texada, the property being in the name of Bettie Maddox,” and as a part of the description of the property therein conveyed the deed states:
“Both tracts of land being a part of the property Sireno E. Bowers contracted to sell to Bettie Maddox before her marriage to James R. Texada, dated December 18, 1941, and now being a part of the Maddox subdivision extension as surveyed, platted and recorded in the Records of Rapides parish, Louisiana by L. J. Daigre, parish surveyor.”
The property conveyed to Mrs. Vanlan-gendonck by the above mentioned deeds, dated May 20, 1942, and October 11, 1943, constituted the western part of the land which Maddox had originally agreed to purchase from Bowers, and it included all of the property which is in dispute in this suit.
Early in 1942, Mr. Maddox engaged L. J. Daigre, a surveyor, to subdivide a part of the property which he had agreed orally to purchase from Bowers. A plat of survey subdividing the eastern part of that property into 16 numbered lots and two unnumbered lots was completed on April 21, 1942, and it was filed for record on May 15, 1942. Betty Street was shown on that survey, and the plat constituted a dedication of that street. On May 12, 1942, the Police Jury of Rapides Parish adopted a resolution abandoning an existing road which ran through a part of the proposed subdivision in favor of Betty Street.
Mr. Maddox later engaged the same surveyor to subdivide the remainder of the property which he had agreed orally to buy from Bowers. Another plat of survey was completed by Mr. Daigre in September, 1943, subdividing all of the property which Maddox originally had agreed to buy from Bowers, including the eastern part which had previously been surveyed. The subdivision is identified in that plat as the “Maddox Subdivision Extension.” The plat subdivides the property lying east of Betty Street into 17 numbered lots and one unnumbered lot, and it subdivides the property lying west of Betty Street into 14 numbered lots (numbered from 18 to 31) and one large unnumbered lot fronting on MacArthur Drive. The large unnumbered lot fronting on MacArthur Drive is the property which is at issue in the instant suit. As already noted, a part of that lot was conveyed to defendant by deed dated May 20, 1942, and the remainder of it was conveyed to her by deed dated October 11, 1943.
The evidence shows that Mr. and Mrs. Maddox lived on and possessed the property in dispute here from December, 1941, until the death of Mr. Maddox in 1943. During that time they built a house on the land, occupied it, repaired the building and had the property subdivided into lots. Mrs. Maddox continued to possess the property after her husband died, and she has lived on it continuously since that time, except for a brief period when she rented it to a third party. She has planted trees and shrubs on the land, has maintained the grounds, has repaired the house and has leased a small part of the property for the erection and maintenance of billboards. Neither Mrs. Vanlangendonck, nor anyone else, has lived on or possessed the property since Mr. and Mrs. Maddox moved on it in 1941.
A dispute arose between plaintiff and Mrs. Vanlangendonck as to the ownership of the property, and as a result of that dispute this suit was instituted on May 17, 1973. Plaintiff contends primarily that she has acquired ownership of the property by prescription of 30 years, under Article 3499 of the Louisiana Civil Code.
The trial judge concluded that the possession exercised by Mr. and Mrs. Maddox, or by either of them, over the subject property has been “precarious at all times,” that neither of said parties intended to possess the property as owner, and that the *742 possession they exercised over the property was not adverse “to the acknowledged record title in defendant.” The trial judge also found that plaintiff at various times acknowledged that defendant was the owner of the property, and he held that those acknowledgments had the effect of interrupting the running of any prescription which may have begun in favor of plaintiff. Judgment thus was rendered by the trial court in favor of defendant, rejecting plaintiff’s demands and dismissing the suit.
We find no error in the conclusions which were reached by the trial judge.
The possession on which acquisitive prescription of 30 years is founded must be continuous and uninterrupted during all of the time, and it must be public and unequivocal and under the title of owner. LSA-C.C. art. 3500. The prescription of 30 years may apply even though the possessor is without any title, and whether he is in good faith or not. LSA-C.C. art. 3475.
A person who is in possession of immovable property is presumed to have possessed it as owner, unless it appears that his possession began in the name of and for another. LSA-C.C. art. 3488. When his possession commenced for another, however, there is a presumption that he continued always to possess under the same title, unless there be proof to the contrary. LSA-C.C. art. 3489.
Article 3520 of the Civil Code provides:
“Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed.”
In Foscue v. Mitchell, 190 La. 758, 182 So. 740 (1938), our Supreme Court said:
“The cases are uniform in holding that the possession must not only begin but also that it must continue as owner and adverse to the true owner.”
* . * * * * *
“The acknowledgment which constitutes an interruption that may defeat the adverse possessor’s claim of title is a factor separate and apart from the essential elements by which title may be acquired by adverse possession. The acknowledgment cannot be so restricted as to eliminate from the law one of the essential elements which must be established in order to acquire title by the mere possession for the time necessary to prescribe. Article 3520 of the Civil Code merely established a means to prevent what might otherwise be the effect of such possession. The acknowledgment may be sufficiently broad to evidence the intent of the possessor no longer to possess as owner, or to show that his original intent was not to possess as owner. But this is not essential. The intention of the possessor not to possess as owner or his acknowledgment of title in another may be shown, and the effect of either is sufficient to defeat the claim of ownership by prescription . . .”
The evidence in this case shows that neither Mrs. Maddox, nor her late husband, ever had any indicia of ownership, and neither of them ever claimed to be owners of the land in dispute here. Mr. Maddox, by entering into an oral agreement to purchase the property from Bowers in 1941, acknowledged that Bowers was the owner of that property when he and plaintiff first began to possess it. Although that oral agreement was not enforceable as a bond for deed contract, it nevertheless constituted an acknowledgment by Mr. Maddox that he was not the owner of that property, and that he was possessing for another. The possession exercised by Mr. and Mrs. Maddox thus was precarious at the outset, since both of them acknowledged that the land was owned by someone else. They obviously went into possession of the property by sufferance or with permission of the owner.
*743 Plaintiff argues that the purchaser under a bond for deed contract has the same right to possess the property as does the purchaser under a sale and mortgage contract, and that the possession exercised by Mr. and Mrs. Maddox after the first bond for deed contract was executed thus was not precarious. We do not agree.
LSA-R.S. 9:2941 defines a “bond for deed” as a “contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.” That definition makes it clear that the buyer does not become the owner of the property until title has been delivered to him by the seller. The possession exercised by the buyer under a bond for deed contract prior to delivery of title, therefore, is at the sufferance of the seller, and his possession thus is precarious.
Since the possession of Mr. and Mrs. Maddox commenced for another, that is, at the sufferance or with the permission of the acknowledged owner, Bowers, it is presumed to have continued under that same title, unless there be proof to the contrary. LSA-C.C. art. 3489.
It is argued that even if plaintiff’s possession was precarious at the outset, that circumstance ended on May 20, 1942, when a part of the subject property was conveyed to Mrs. Vanlangendonck. We find, however, that Mr. and Mrs. Maddox acknowledged that defendant was the owner of the subject property after Bowers conveyed it to her by the deeds dated May 20, 1942, and October 11, 1943. Their possession thus continued to be precarious after those dates.
On February 6, 1943, Mrs. Vanlangen-donck executed a deed conveying to the Louisiana Department of Highways a right-of-way for the construction of the Alexandria By-pass Highway. The property affected by that right-of-way deed was a part of the land which she had acquired from Bowers, and it was a part of the lot on which plaintiff and her husband were residing. Mr. Maddox was living at that time, and he signed that right-of-way deed as a witness. The granting of the right-of-way also made it necessary for Maddox to move the house in which he was living from its original location and to dig another well, all of which was done by him without protest. By witnessing that right-of-way deed, he acknowledged that the land was owned by defendant, Mrs. V anlangendonck.
On November 25, 1943, Mrs. Vanlangen-donck executed a “bond for deed contract” with Harry Vaughan, under the terms of which she agreed to sell to Vaughan Lot 25 of the Maddox Subdivision Extension upon payment of the agreed purchase price. Mr. Maddox was deceased when that agreement was entered into, but plaintiff, Mrs. Maddox, signed that contract as a witness. By doing so, she acknowledged that Mrs. Vanlangendonck owned the lot. The evidence shows that Mrs. Vanlangendonck executed a deed conveying that lot to Vaughan on February 21, 1944.
Although Lot 25 of the above subdivision is not at issue in this suit, Mrs. Van-langendonck acquired that lot by the same acts of sale which conveyed to her the property which is in dispute here. We think plaintiff’s acknowledgment that defendant was the owner of Lot 25 constituted an acknowledgment that she also owned the other property which was conveyed by the same acts of sale, including the subject property.
The evidence also shows that a meeting of the members of the Maddox family was convened a few years before this suit was filed for the purpose of trying to persuade Mrs. Vanlangendonck to convey to Mrs. Maddox the tract of land on which the latter resided. We cannot determine the exact date on which that meeting was held, but the record shows that it was held in defendant’s home, and that defendant’s *744 husband, Fred J. Vanlangendonck, was present. Mr. Vanlangendonck died on February 17, 1970, so the family meeting obviously was held sometime before that date. Mr. and Mrs. Vanlangendonck, Mrs. Maddox and several of Mrs. Maddox’s other children were present. At that meeting Mrs. Maddox requested that defendant execute a deed conveying the property to her. Her verbal request that that be done at that time also constituted an acknowledgment by Mrs. Maddox of the fact that the property was owned by defendant.
After the property had been subdivided and sold to Mrs. Vanlangendonck, the latter executed a number of deeds selling lots to various purchasers. She testified that the amounts which she received for the sale of the lots were turned over to her father prior to his death, and thereafter to her mother, and that those funds were used to pay on the purchase price of the property which had been acquired from Bowers. The evidence shows that defendant paid the city taxes on the subject property from the time it was included in the city limits in 1958, until 1974, and that those taxes were paid from her own funds, or from funds belonging to her husband. She also paid the assessment imposed on the property for the paving of Betty Street. Mrs. Maddox knew that defendant was selling the lots and was paying the taxes and the paving lien due on the property. She did not contribute to the payment of the taxes or the paving assessment.
The evidence thus is convincing that plaintiff has never claimed to be the owner of the property, and that she has consistently recognized that defendant was and is the owner of the property which she has possessed.
Plaintiff points out that the subject property has been assessed to Mrs. Van-langendonck since 1943, and that for many years the latter signed applications for homestead exemptions in behalf of her mother relative to this property, certifying in effect that her mother was the owner of and resided on the property. She argues that the signing of these applications constituted an acknowledgment by defendant that Mrs. Maddox was the owner of the property. We do not agree. The signing of those applications for homestead exemptions did not have the effect of transferring title to Mrs. Maddox, and the fact that they were signed does not establish that plaintiff possessed the property as owner since 1943.
On September 25, 1973, which was shortly after the instant suit was filed, Mrs. Vanlangendonck instituted an eviction proceeding against her mother, Mrs. Maddox, seeking to evict her from the subject property. That proceeding apparently is still pending in the Ninth Judicial District Court, Rapides Parish, Louisiana.
We conclude, as did the trial judge, that Mrs. Maddox has not possessed the subject property as owner, and that her possession thus has not been sufficient to entitle her to ownership of the property by acquisitive prescription of thirty years.
Although counsel have not raised the issue, we wish to point out that we have given effect to the role of possession in this action for declaratory judgment where the ownership of immovable property has been decided. LSA-C.C.P. art. 3654 provides that where the issue of ownership of immovable property is presented in an action for declaratory judgment, the court shall render judgment in favor of the party: “(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless the adverse party makes out his title thereto; or (2) who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action.” In the present case, plaintiff, Mrs. Maddox, was still living on the property and had possessed it for many years at the time this suit was filed in 1973. However, *745 LSA-C.C.P. art. 3660 provides that a person is in possession of immovable property within the intendment of the real actions, only where he “possesses for himself.” Mrs. Maddox did not possess for herself. She possessed for the defendant, Mrs. Vanlangendonck. Therefore, plaintiff is not entitled to judgment under LSA-C.C.P. art. 3654(1), even though the adverse party, Mrs. Vanlangendonck, has not made out her title to the property whose ownership is at issue in these proceedings.
Plaintiff also contends that the two acts of sale from Bowers to Mrs. Vanlan-gendonck, dated May 20, 1942, and October 11, 1943, constituted donations inter vivos from Mr. Maddox to defendant. She takes the position that those donations divested Mr. Maddox, as the donor, of all of his property, and that the donations thus are null. She relies on LSA-C.C. art. 1497, which provides:
“The donation inter vivos shall in no case divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.”
We find no merit to that argument. In the first place, the property was never owned by Mr. Maddox, and it thus could not have been donated by him. Second, the law provides that every act of donation of immovable property made during the lifetime of the donor must be in the form of an authentic act. See LSA-C.C. art. 1536. No authentic act was executed by Mr. Maddox purporting to transfer the subject property to Mrs. Vanlangendonck. Plaintiff has not sought in this action to have the deeds from Bowers to defendant reformed to show that the property actually was conveyed to Mr. Maddox, and even if that relief had been sought the evidence would not support such a demand. Third, the acts of sale from Bowers to Mrs. Van-langendonck cannot be considered as donations. In each instance the property was sold for a price, and the evidence shows that the price was paid. And, finally the evidence does not show that Mr. or Mrs. Maddox were divested of all of their property at the time the above deeds were executed conveying the property to Mrs. Van-langendonck.
Our conclusion is that the conveyance of a part of the subject property from Bowers to Mrs. Vanlangendonck on May 20, 1942, and the conveyance of the remainder of such property to defendant on October 11, 1943, were valid and were not void as being prohibited donations under LSA-C.C. art. 1497.
In our opinion there is no error in the judgment appealed from, and that judgment thus will be affirmed.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.