# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 06-0825


**EDWARD W. HOOPER, JR., ET AL.**

**VERSUS**

**RICHARD PEERLESS HOOPER, ET AL.**


**\*\*\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 211,451,
HONORABLE F. RAE SWENT, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\*\*\***


**JIMMIE C. PETERS**
**JUDGE**


**\*\*\*\*\*\*\*\*\*\*\*\***


Court composed of Oswald A. Decuir, Jimmie C. Peters, and Glenn B. Gremillion, Judges.


**REVERSED AND RENDERED.**

**Valerie Thompson**
**Johnson & Siebeneicher, Inc.**
**Post Office Box 648**
**Alexandria, LA  71309**
**(318) 484-3911**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
 Edward W. Hooper, Jr.
 Gregory W. Hooper

**Dan E. Melichar**
**Attorney at Law**
**Post Office Box 1306**
**Alexandria, LA  71309**
**(318) 445-8565**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
 Michael H. Jenkins
 Haydee F. Jenkins

PETERS, J.

The plaintiffs in this litigation, Edward W. Hooper, Jr., and Gregory W. Hooper, brought suit against Michael H. Jenkins and his wife, Haydee F. Jenkins, to be declared the owners of an undivided one-sixteenth interest in a 160-acre tract of land in Rapides Parish, Louisiana.[1] The trial court rendered judgment in favor of the plaintiffs, and the defendants have perfected this appeal. For the following reasons, we reverse the trial court judgment and render judgment in favor of the defendants, dismissing the plaintiffs' demands.

### DISCUSSION OF THE RECORD

There are basically no factual disputes in this litigation. The 160 acres at issue was once owned by Richard Peerless Hooper, Sr., and his wife, Leona Hooper. When Richard Peerless Hooper, Sr., died in 1957, he was survived by his wife, two sons, and six daughters. The two sons, Edward W. Hooper, Sr., and Richard Peerless Hooper, Jr., were generally referred to at trial as "Billy" and "R. P." respectively, and, for the purpose of simplification of the background facts, we will refer to them by these family names. The plaintiffs derive their claim to the undivided interest from a conveyance from R. P. to Billy, and the defendants derive their claim from a conveyance by the administratrix of R. P.'s succession to them.

After his father's death, Billy began an attempt to acquire the interests of the other co-owners in the 160 acres. He first acquired his mother's one-half interest by a deed dated January 13, 1958. By a second deed dated December 27, 1958, he attempted to purchase R. P.'s interest, and this purported conveyance is the origin of the current litigation. The deed identified the vendor as Richard Peerless Hooper and recited that he was "a single man over the age of twenty-one years, herein represented

---

[1]The 160 acres is described as the Southwest Quarter (SW1/4), Section Twenty-Seven (27), Township Four North (T4N), Range Two East (R2E), Rapides Parish, Louisiana.

by Leona Sullivan Hooper." It recited the consideration for the transfer as $200.00 and provided that R. P. was to retain a usufruct over the property for his lifetime. By the deed's terms, R. P. also retained "all right, title and interest in and to all minerals, mineral rights, timber, timber rights, or leases thereof." Leona Sullivan Hooper signed her name as vendor on a line under which was typed the name Richard Peerless Hooper, Jr.

It is not disputed on appeal that this deed was not sufficient to transfer R. P.'s interest to Billy. In fact, the most significant undisputed fact in this litigation is that R. P. was brain-injured during birth and mentally incompetent all his life. Thus, he was totally incapable of handling his own affairs. In fact, he could not sign his own name. R. P.'s disability was both physical and mental, and, had it not been for the devotion and willingness of his family members in caring for him, primarily his mother and his six sisters, he would have been institutionalized.

Despite R. P.'s known mental and physical deficiencies, nothing was done to legally recognize his incompetence until October 2, 1995, when his sister, Sue Hooper Bennett, filed a petition to have him interdicted. The trial court rendered a judgment of interdiction on December 15, 1995, and appointed Ms. Bennett as curatrix of his estate. The interdiction proceedings included as a part of R. P.'s assets the undivided one-sixteenth interest in the 160 acres. Thus, when Leona Sullivan Hooper signed the December 27, 1958 cash deed on behalf of R. P., she had no judicially recognized authority to act on his behalf.

Sometime in 1960, Billy built a house for his mother and R. P. next to one of his sisters, but on property other than the 160 acres. Notwithstanding the obvious invalidity of the deed from his brother, Billy moved onto the 160 acres and lived in

2

what had been his parents' home until 1964 when it burned. Sometime during this period, a succession proceeding was opened on Richard Peerless Hooper, Sr., and a judgment of possession was rendered. The judgment of possession, which was executed by the trial court on April 27, 1964, recognized the deceased's eight children as his heirs and, thus, the owners of an undivided one-sixteenth interest each in the 160 acres, subject to the usufruct of their mother. Also in 1964, the six sisters conveyed to Billy, by separate deeds, their undivided interests in the 160 acres.[2] Thereafter, Billy built a new house on the property and mortgaged it to secure a loan for the construction costs. He and his wife continued to live on the land, and, between 1964 and his death in March of 1995, he fenced the 160 acres, used it for a cattle operation, cut hay and sold timber off the property, and paid all of the property taxes as they came due.

After Billy's death, a succession proceedings was opened to settle his estate. A July 7, 1995 judgment of possession recognized that his ownership interest in the 160 acres was part separate and part community[3] and placed his wife and two sons in possession of all the assets belonging to his estate in the appropriate fractional proportions. However, the judgment of possession recognized Billy's interest in the 160 acres as being a fifteen-sixteenth interest.

On January 6, 2003, Billy's two sons, Edward W. Hooper, Jr., and Gregory W. Hooper, the plaintiffs herein, filed suit against R. P., seeking to be declared owner of the undivided one-sixteenth interest which had been the subject of the December 27, 1958 cash deed. In their petition, they asserted that the 1958 deed validly transferred

---

[2]According to the testimony, in 1979 Billy conveyed ten acres, a one-sixteenth, back to a sister, Ovay. A copy of the instrument evidencing this transfer is not in the record.

[3]Billy had purchased his sisters' shares after his marriage.

R. P.'s interest to their father. In the alternative, they asserted that their father acquired ownership of R. P.'s interest by acquisitive prescription. With regard to this latter argument, they claimed that their father's possession of the undivided interest, although initially precarious, changed to adverse in 1958 when he demonstrated his intent to claim the property as his own by overt and unambiguous acts sufficient to give notice to R. P.

R. P. was served with his nephew's suit through Ms. Bennett as curatrix for his estate. She answered the suit in that capacity[4] and in the answer asserted that all of the conveyances to Billy from his mother and siblings were simulations to allow Billy to use the property as security for a loan and that, thereafter, he was suppose to have transferred the interests back to his mother and siblings.[5] She further asserted in her answer that R. P. received no consideration for his interest, that his mother did not have the authority to sign for him, and that Billy never possessed the property adverse to R. P.

On March 19, 2003, and before this matter could come to trial, R. P. died. Thereafter, his succession was opened, and Ms. Bennett was appointed administratrix of the succession. Functioning through the succession proceedings, she sought court approval to sell R. P.'s one-sixteenth interest in the 160 acres by private sale to the defendants, Michael and Haydee Jenkins, for the sum of $15,000.00. The trial court

---

[4]As noted in the answer filed on behalf of R. P. by his curatrix, the plaintiffs erroneously named R. P. as the party defendant. Louisiana Code of Civil Procedure Article 733 provides that "[a] mental incompetent has no procedural capacity to be sued" and that the appropriate party defendant is the duly appointed curator. However, because of R. P.'s subsequent death, this procedural deficiency plays no part in the resolution of this litigation.

[5]In support of this argument, the answer further asserts that, "after years of nagging," Billy transferred a one-sixteenth interest back to his sister, Ovay Hooper Hudson. While the deed reflecting this transfer is not of record, the testimony at trial established that in 1979 Billy did transfer ten acres (one sixteenth of the whole) to Ms. Hudson.

granted this approval by an order executed July 20, 2004.[6] The authorized sale was consummated on August 3, 2004, and, on August 11, 2004, Michael and Haydee Jenkins were substituted as party defendants in this litigation.

After trial, the trial court rendered judgment in favor of the plaintiffs, concluding that Billy had acquired R. P.'s undivided one-sixteenth interest by the acquisitive prescription of thirty years and that the plaintiffs were now the owners by virtue of his prescriptive title. The defendants have appealed, and, in their sole assignment of error, they assert that the trial court erred legally in concluding that Billy acquired a prescriptive title to the one-sixteenth interest belonging to R. P.

### OPINION

Ownership of immovable property claimed by acquisitive prescription may be acquired by either ten years possession as provided for in La.Civ.Code art. 3473 or by thirty years possession as provided for in La.Civ.Code art. 3486. The difference between the two is that the former requires that one must show "possession of ten years, good faith," and "just title" [La.Civ.Code art. 3475], while the latter requires a showing only of possession for thirty years "without the need of just title or possession in good faith" [La.Civ.Code art. 3486]. Still, "[t]he rules governing acquisitive prescription of ten years apply to the prescription of thirty years to the extent that their application is compatible with the prescription of thirty years." La.Civ.Code art. 3488.

One of the rules governing ten-year acquisitive prescription which is applicable to a claim of thirty-year acquisitive prescription is found in La.Civ.Code art. 3477 and provides that "[a]cquisitive prescription does not run in favor of a precarious

---

[6]The record reflects that the plaintiffs appeared in the succession proceedings in opposition to the proposed sale.

5

possessor or his universal successor." A precarious possessor is one who exercises possession over a thing "with the permission of or on behalf of the owner or possessor." La.Civ.Code art. 3437. Additionally, because a co-owner possesses immovable property for himself and his co-owners, he is a precarious possessor. Revision Comment (e) to La.Civ.Code art. 3476. Thus, a co-owner of immovable property "is presumed to possess for another although he may intend to possess for himself." La.Civ.Code. art. 3438.

In the matter now before us, immediately after his father's death, Billy's relationship to the 160 acres vis-à-vis his mother and siblings could be no greater than that of a precarious possessor. However, "[a] co-owner, or his universal successor, commences to possess for himself when he demonstrates this intent by overt and unambiguous acts sufficient to give notice to his co-owner." La.Civ.Code art. 3439. Until he does give sufficient notice to the person on whose behalf he is possessing that he intends to possess for himself, acquisitive prescription never commences. *Feazel v. Howard*, 511 So.2d 1306 (La.App. 2 Cir.), *writ denied*, 514 So.2d 456 (La.1987). Thus, the question to be addressed in this appeal is whether Billy demonstrated his intent to possess the 160 acres for himself by sufficient overt and unambiguous acts as to give notice of this intent to his co-owner, R. P. That is to say, at what point, if at all, did prescription begin to run in favor or Billy and against his brother. "The party seeking title to a tract through acquisitive prescription bears the burden of proof." *Owens v. Smith*, 541 So.2d 950, 952 (La.App. 2 Cir. 1989).

In its oral reasons for judgment, the trial court stated that the December 27, 1958 deed, although not sufficient in itself to transfer title from R. P. to Billy, commenced an adverse possession "clear to all of the world and certainly all of the

6

people in the world that knew about it." While acknowledging that Billy's thirty-year possession would have been sufficient to establish a prescriptive title based on adverse possession against a stranger, the defendants argue that it was not sufficient to establish a prescriptive title against R. P. as a co-owner, particularly given R. P.'s mental incompetence. We agree. Where the trial court's decision is based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983). The standard of our review is accordingly *de novo*.

The first conclusion that the facts of the case and the law compel is that no acts, however overt and unambiguous, could have sufficed as notice to R. P. Both the code articles and the jurisprudence show that the notice must be to the co-owner, not to the world in general as concluded by the trial court, and that there must be overt and unambiguous acts sufficient to give notice to a co-owner. *See Dunham v. Nixon*, 371 So.2d 1288 (La.App. 3 Cir. 1979); *S. Natural Gas Co. v. Naquin*, 167 So.2d 434 (La.App. 1 Cir.), *writ refused*, 246 La. 884, 168 So.2d 268 (1964). Long ago, in *John T. Moore Planting Co. v. Morgan's Louisiana & T.R. & S.S. Co.*, 126 La. 840, 53 So. 22 (1908), our supreme court held that the notice must be enough so that the person in interest will have knowledge of it. The same decision explained that the outward acts of possession had to be of an unusually pronounced character so as to "let the owner know that a new order of things has begun." *Id.* at 35. "In order for one coowner or coheir to prescribe against the other, his possession must be clearly hostile to the rights of the other and, in such instances, it is necessary, in order to commence the running of prescription, that notice be given by the former to the latter

7

of his intention to hold, animo domini, all of the common property." *S.E. Pub. Serv. Co. v. Barras*, 246 So.2d 298, 300 (La.App. 3 Cir. 1971) (quoting *Lee v. Jones*, 224 La. 231, 237-38, 69 So.2d 26, 28 (1953)). An adversely possessing co-owner must give notice to the other owner or owners in common that he intends to possess contrary to the common interest. *Id.*

In the present case, R. P. was mentally incapable of knowing the significance of adverse possession however pronounced, glaring, or hostile the acts manifesting Billy's intent to so possess might have been. Incompetent from birth, no act, however overt or unambiguous, would have served as notice to him. Appropriate notice to a legal representative would have been notice to him, but it was not until 1995 that a legal representative was appointed and qualified for him.

The plaintiffs point out that La.Civ.Code art. 3474 provides that prescription runs against incompetents. We acknowledge this article, but note that it refers to the ten-year acquisitive prescription provided for in La.Civ.Code art. 3473 and that La.Civ.Code art. 3488 makes the rules governing ten-year acquisitive prescription applicable to the prescription of thirty years only "to the extent that their application is compatible with the prescription of thirty years." It is understandable that ten-year acquisitive prescription might run against an incompetent, because its very nature requires good faith. La.Civ.Code art. 3475. Thirty-year acquisitive prescription requires no good faith. However, we need not reach the issue of whether the thirty-year acquisitive prescription runs against an incompetent, because we find that in this case, the prescription never began to run.

Even if it could be said that notice was given to R. P., in this case Billy's possession was not demonstrably unambiguous. Louisiana Civil Code Article 3435

8

provides that equivocal possession has no legal effect. Additionally, La.Civ.Code art. 3436 provides that possession is equivocal "when there is ambiguity as to the intent of the possessor to own the thing." Planiol gives examples of the vice of being equivocal:

> Possession is equivocal when the acts of enjoyment can be explained in two ways. Most practical examples of equivocal possession come up in cases dealing with property in a state of indivision. Each of the co-owners has a right to perform acts of possession upon the totality of the thing. Such acts are ambiguous because they could be performed in virtue of the owner's partial ownership, as well as in virtue of exclusive ownership. As long as this ambiguity lasts his possession remains ineffective as against his co-owners. In order to dissipate this uncertainty it is necessary that he exclude his co-owners in some manifest manner.

1 M. Planiol, Traité élémentaire de droit civil 1 Pt. 2, at 350-351 (Louisiana State Law Institute trans.1959).

Louisiana Civil Code Article 2452 provides that "[t]he sale of a thing belonging to another does not convey ownership." All agree that the 1958 deed did not convey ownership of the 160 acres to Billy. Nevertheless, "[t]he acquisition and recordation of a title from a person other than a co-owner may mark the commencement of prescription." La.Civ.Code art. 3478. Where one co-owner goes into continuous possession by reason of a deed translative of title, "even though the deed be invalid and the possession be in bad faith, the co-owner's possession ordinarily is then regarded as hostile to any claim of his co-owners and as normally rebutting any presumption that he was possessing for his co-owners as well as himself." *Cont'l Oil Co. v. Arceneaux*, 183 So.2d 399, 401 (La.App. 3 Cir.), *writ refused*, 249 La. 66, 184 So.2d 736 (1966).

However, the adverse title was not sufficient notice in the present case. To the contrary, by providing that R. P. retained the usufruct over his interest, the deed was

9

probative of Billy's acknowledgment of R. P.'s usufruct, and, therefore, Billy's possession continued to be precarious. To explain, we repeat the definition of precarious possession in La.Civ.Code art. 3437: "The exercise of possession over a thing with the permission of or on behalf of the owner or possessor is precarious possession." Applying this article, if the deed could be said to have had the effect of changing the character of Billy's possession, it changed his possession only on behalf of R. P. as owner to one on behalf of R. P as possessor. The acknowledgment of an adverse title in another establishes the intent to possess precariously. *Maddox v. Vanlangendonck*, 334 So.2d 739 (La.App. 3 Cir. 1976). Thus, even if the attempted transfer of naked ownership could be regarded as probative of Billy's intent to commence possession for himself, that intent was negated by the instrument's reservation of the usufruct which included the right of possession in R. P. Because of that, Billy's possession was equivocal and continued to be precarious following that attempt to commence possession for himself.

It is certainly true that Billy's occupancy of the property and acts of possession for over thirty years were sufficient to establish acquisitive prescription adverse to a stranger. The defendants admit this. However, because Billy and his brother, R. P., were co-owners, the burden of proof of Billy's heirs was to establish the commencement of Billy's possession for himself, and, to establish this commencement, they had to show when and how Billy demonstrated by overt and unambiguous acts sufficient to give notice to his brother that Billy intended to possess for himself. Until he made such a demonstration he remained a precarious possessor and never commenced to prescribe. Billy's heirs failed to prove a change

from precarious to adverse possession. Acquisitive prescription never began. The trial court erred legally in holding that it did.

**DISPOSITION**

For the foregoing reasons, we reverse the trial court judgment declaring that the plaintiffs, Edward W. Hooper, Jr., and Gregory W. Hooper, are the owners of the property described as an undivided one-sixteenth interest in property described as the Southwest Quarter (SW1/4), Section Twenty-Seven (27), Township Four North (T4N), Range Two East (R2E), Rapides Parish, Louisiana, containing 160 acres, and render judgment dismissing the plaintiffs' demands at their costs.

**REVERSED AND RENDERED.**