STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

DEBRA GAIL THERIOT AUCOIN FLEMMING

VERSUS

JAMES BAILEY FLEMMING

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 90176
HONORABLE CHARLES L. PORTER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**REVERSED AND RENDERED.**

Natalie B. Broussard
Attorney at Law
203 West Main St., Suite 200
New Iberia, LA 70560
(337) 365-9000
COUNSEL FOR PLAINTIFF/APPELLANT:
    Debra Gail Theriot Aucoin Flemming

**Elizabeth Anne Long**
**Attorney at Law**
**600 Jefferson Street, Suite 504**
**Lafayette, LA 70501**
**(337) 266-2180**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **James Bailey Flemming**

**PETERS, J.**

Debra Gail Theriot Aucoin Flemming appeals a trial court judgment nullifying a previous judgment of monthly spousal support rendered against her former husband, James Bailey Flemming. For the follow reasons, we reverse the trial court judgment and render judgment reinstating the previous judgment in its entirety, except as that judgment was modified by a subsequent judgment rendered on June 24, 2011.

### DISCUSSION OF THE RECORD

Debra Gail Theriot Flemming (Debra) and James Bailey Flemming (James) were married on December 31, 1996; physically separated for the last time on October 6, 1998; and divorced by judicial decree on February 11, 2000. James was personally served with the divorce petition, retained counsel to represent his interests, and almost immediately moved to the state of Illinois. Although Debra filed the initial petition for divorce on December 9, 1998, the divorce decree was rendered on James' motion based on La.Code Civ.P. art. 102.

Debra's original petition included, among other things, a request for both temporary and permanent spousal support, and, by a judgment executed April 6, 1999, the trial court awarded her temporary spousal support in the amount of $800.00 per month. On February 3, 2000, or eight days before the trial court rendered judgment granting the divorce, Debra filed a rule to show cause why she should not be awarded a judgment of final spousal support. The trial court set this rule for hearing on March 23, 2000, and James' counsel of record was served with the pleading and notice of the hearing date.

On February 15, 2000,[1] James, who was still living in Illinois at the time, wrote to his counsel of record wherein he stated, "AS OF TODAY, I AM FIRING YOU AS MY ATTORNEY AND NO LONGER NEED YOUR SERVICES." The record does not contain evidence of when James forwarded this letter to his attorney, but it was obviously not the same day as it was written because the attorney continued to represent James in the litigation. On February 24, 2000, he filed a motion on behalf of James seeking a continuance of the March 23, 2000 hearing. The motion stated that James would be working in Valdez, Alaska, on that date and would not return to Louisiana until March 25, 2000. Based on the content of this motion, and without a hearing, the trial court granted the motion for continuance and rescheduled the hearing for April 25, 2000.

Before this hearing could be held, the trial court was confronted with motions from both litigants. The court minutes of April 25, 2000, reflect that when the matter was called in open court at 10:00 a.m., an attorney appearing on behalf of James' counsel orally requested a continuance of the pending matter.[2] The minutes do not state the basis for the motion, but establish that the trial court granted the motion and continued the matter without date. The minutes also fail to indicate whether the trial court was informed that James had terminated his attorney's services.

However, at 2:00 p.m. that same day, James' counsel filed a motion to withdraw as counsel based on James' February 15, 2000 correspondence, a copy of which was attached to his motion. The trial court executed an order that same afternoon, allowing the attorney to withdraw as counsel for James. At some point on April 25, 2000, the trial court granted a another written motion for continuance

---

[1] The letter is erroneously dated "2/15/99."
[2] The minutes make no reference to any appearances other than that of the attorney representing James' counsel.

2

filed the previous day by Debra's counsel and rescheduled the hearing on the rule for June 22, 2000.

This matter is currently before us because notice of the June 22, 2000 hearing date was not served on James. Instead, service was effected on his former counsel. When the matter came for hearing on June 22, 2000, James did not appear and the matter proceeded to trial without him. At the end of the hearing, the trial court rendered judgment wherein, among other things, it awarded Debra permanent spousal support in the amount of $1,100.00 per month.[3]

The record remained relatively dormant for a number of years after 2000, and the next entries in the record before us relate to Debra's 2009 attempts to reinscribe and/or revive the monetary sums awarded to her at the June 22, 2000 hearing. The record before us suggests that Debra attempted long-arm service on James to notify him of these filings, but nothing in the record establishes that he received notice of this activity.

In 2009, James became aware that a judgment against him existed when funds from his salary were withheld by his employer pursuant to an income assignment order based on the judgment arising from the June 22, 2000 support obligation hearing. Two years later, on April 23, 2011, James was personally served with a March 3, 2011 rule to show cause filed by Debra. In that rule, Debra sought to have James held in contempt for failure to pay the permanent spousal-support judgment arising from the June 22, 2000 hearing, and further sought a judgment for the past-due spousal support and an award of attorney fees. The trial court set this hearing for May 18, 2011, before a hearing officer.

---

[3] The trial court first executed a written judgment on July 13, 2000, but executed an amended judgment on August 22, 2001. The amendments did not affect the award of permanent spousal support.

3

James did not personally appear at the May 18, 2011 hearing, but was represented by his new counsel at the proceeding. The record before us contains the hearing officer recommendations arising from those proceedings, and on June 15, 2011, the trial court executed a judgment corresponding to those recommendations. This judgment was in favor of Debra and against James, awarding Debra $130,900.00 as back-due spousal support owed under the judgment arising from the June 22, 2000 hearing and $1,000.00 as attorney fees for successfully prosecuting the deficiency action; finding James in contempt of court for failing to comply with the judgment; and sentencing him to serve ninety days in the parish jail for contempt of court. The trial court ordered that the parish jail sentence be suspended provided James serve any sentence previously imposed for a prior contempt of court judgment; resume paying spousal support in accordance with the judgment arising from the June 22, 2000 hearing; begin paying an additional $1,000.00 per month to address the arrears judgment; pay Debra $1,000.00 in attorney fees within ninety days; and pay all costs of court within thirty days.

On June 10, 2011, or after the hearing officer proceeding and five days before the trial court rendered the June 15, 2011 judgment, James filed a rule to show cause why the final periodic spousal support award should not be terminated. This rule came before the trial court on June 24, 2011, and resulted in a consent judgment executed that same day. The consent judgment provided "that any and all future spousal support payments are hereby terminated effective June 10, 2011[.]" The judgment further provided that "any jail sentence currently pending against [James] is suspended" so long as he complies with all court orders and keeps his former wife "advised of his current employment." Finally, the consent judgment provided that the "[p]resent Income Assignment in the amount of

4

$2100.00 remains in effect until all judgments and court orders are satisfied." Both James and Debra, as well as their attorneys, signed the judgment below the notation "**APPROVED AS TO FORM AND CONTENT**."

However, this judgment did not end the litigation. Two months and one day later, on August 11, 2011, James filed a rule to set aside the judgment arising from the June 22, 2000 hearing, asserting that the judgment was a nullity. He based his motion on the lack of service to him of notice of the June 22, 2000 hearing, and his assertion that he received no notice of the hearing from any other source. The trial court heard this rule on November 18, 2011.

At the hearing on this rule, James testified that he was residing in Iberia Parish, Louisiana, when Debra filed for divorce and that he retained an attorney to assist him in the litigation; responded to the petition through the attorney; and immediately moved to Illinois and became a resident of that state. He further acknowledged that he was ordered to pay temporary spousal support during the pendency of the divorce proceedings and that his paycheck had been made the subject of an income assignment and order of support. According to James, he terminated the services of his attorney immediately after the trial court rendered the judgment of divorce on February 11, 2000. Although he denied ever being aware of Debra's February 3, 2000 filing seeking permanent spousal support, he acknowledged that he was represented by his counsel of record at that time.

James further testified that after terminating his attorney's services, he never provided anyone in Louisiana with an address where he could be contacted and that he moved to the State of Washington in 2003. His next contact with the Louisiana proceeding occurred in May of 2009, when his employer began withholding amounts from his paycheck pursuant to the income assignment order. Not only did he not take any action to stop the income assignment, but his

5

employer was still withholding part of his pay check at the time of the November 18, 2011 hearing. In fact, he did not begin searching for an attorney to assist him in this matter until 2011.

The trial court took the matter under advisement, and on January 10, 2012, rendered reasons for judgment granting James' request to have the June 22, 2000 judgment nullified. On March 5, 2012, the trial court executed a written judgment nullifying the judgment and vacating the income assignment then in force. Debra responded by filing a motion for new trial, which was heard on April 27, 2012. After considering the arguments of counsel at that hearing, the trial court rendered a judgment setting aside that portion of the March 5, 2012 judgment vacating the income assignment order and reinstated the order pending further orders of the court. The trial court took the new trial issue under advisement and, in written reasons for judgment dated June 9, 2012, and filed on June 13, 2012, the trial court rejected Debra's motion for new trial. The trial court executed a written judgment to this effect on June 25, 2012, and Debra timely perfected this appeal.

In her appeal, Debra asserts two assignments of error:

1) The trial court committed manifest error in failing to recognize that **JAMES FLEMMING** had adequate notice and [in] vacating the Judgment under LA C.C.P. Art. 2002.

2) The trial court committed manifest error in rejecting the application of voluntary acquiescence.

While we reject Debra's initial argument that notice was adequate for the June 22, 2000 hearing, we find merit in her second assignment of error.

## OPINION

The trial court declared the judgment arising from the June 22, 2000 hearing null due to the lack of service on James of notice of the hearing as required by law, and because James' subsequent actions did not constitute a voluntarily

6

acquiescence in the judgment. On appeal, Debra does not dispute the factual findings of the trial court. Rather, she asserts that the trial court reached incorrect legal conclusions in applying the facts to this case. Because the issues are legal and not factual, the standard of review is de novo. *Hooper v. Hooper*, 06-825 (La.App. 3 Cir. 11/2/06), 941 So.2d 726, *writ denied*, 06-2823 (La. 1/26/07), 948 So.2d 177.

As stated in La.Code Civ.P. art. 6(A)(1), the "legal power and authority of a court to render a personal judgment against a party to an action or proceeding. . . . requires . . . [t]he service of process on the defendant, or on his agent for service of process, or the express waiver of citation and service under Article 1201." However, La.Code Civ.P. art. 1201(A) (emphasis added), further provides that "[c]itation and service thereof are essential in all civil actions *except* summary and executory proceedings, divorce actions under Civil Code Article 102, and proceedings under the Children's Code." A summary proceeding includes "[t]he original granting of, subsequent change in, or termination of . . . support for a spouse[.]" La.Code Civ.P. art. 2592(8). With regard to service requirements in a summary proceeding, La.Code Civ.P. art. 2594 provides:

> Citation and service thereof are not necessary in a summary proceeding. A copy of the contradictory motion, rule to show cause, or other pleading filed by the plaintiff in the proceeding, and of any order of court assigning the date and hour of the trial thereof, shall be served on the defendant.

Thus, all that was required to satisfy service of process on James with regard to the June 22, 2000 hearing was to have him served with a copy of the rule to show cause and the order of the trial court assigning the matter for hearing at the appropriate time on June 22, 2000. However, this did not happen as the service was made on his prior counsel of record, and James received no notice of the date and time of the hearing from any other source. In fact, he only became aware that

7

a judgment had been rendered against him in May of 2009 when his paycheck became subject to an income assignment order.

This lack of adequate notice implicates a procedural due process concern. Each individual is afforded an opportunity to be heard in addition to the notice of a pending action. *Lassere v. State, Dept. for Health & Hospitals*, 00-306 (La.App. 1 Cir. 3/28/01), 808 So.2d 513. Adequate notice of the hearing, therefore, is fundamental. *Id.* Because adequate notice is so fundamental, the lack thereof gives rise to a nullity action. Louisiana Code of Civil Procedure Article 2002(A)(2) (emphasis added) provides, in pertinent part, that "[a] final judgment *shall be annulled* if it is rendered . . . [a]gainst a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction[.]" Thus, considering only the absence of compliance with La.Code Civ.P. art. 2594, with respect to the June 22, 2000 hearing, it would seem that James was entitled to a nullity judgment.

However, as pointed out by Debra on appeal, La.Code Civ.P. art. 2003 provides, in pertinent part, that "[a] defendant who voluntarily acquiesced in the judgment, or who was present at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment on any of the grounds enumerated in Article 2002." Debra argues that James' actions subsequent to being made aware of the judgment at issue constitutes acquiescence, and he can no longer complain of lack of notice.

Debra first argues that James' failure to take steps to set aside the income assignment order in 2009 constituted a voluntary acquiescence in the judgment arising from the June 22, 2000 hearing. We do not find that such inaction is sufficient to satisfy the requirements of voluntary acquiescence as mere failure to

8

act does not necessarily qualify as acquiescence pursuant to La.Code Civ.P. art. 2003. *See Donnelly v. Quatroy*, 03-1145 (La.App. 5 Cir. 1/27/04), 866 So.2d 917.

Next, Debra argues that James' participation in all of the proceedings after being personally served with her March 3, 2011 rule to show cause constituted voluntary acquiescence in the judgment. We find merit in this argument although we do note that James' initial participation at the hearing officer proceeding in the litigation on May 18, 2011, did not by itself, constitute a voluntary acquiescence. That initial appearance constituted more of a response to the trial court's order that he respond to the allegations of Debra's rule to show cause than a voluntary acquiescence. *See Custom Acceptance Corp. v. Paul*, 376 So.2d 510 (La.App. 4 Cir. 1979). Still, the record before us contains no evidence that James objected to the trial court's authority to consider the issue of past-due spousal support during the hearing officer proceeding or when the trial court rendered the June 15, 2011 judgment based on the hearing officer's recommendation.

We find that it was James' continued participation in the litigation after the May 18, 2011 appearance before the hearing officer, combined with his initial response at that hearing, that constitutes voluntary acquiescence. Not only did James not initially contest the validity of the judgment arising from the June 22, 2000 hearing when he first responded to Debra's March 3, 2011 filing, but his subsequent response on June 10, 2011, was a rule to show cause seeking to have the judgment *terminated*, not *annulled*. He then actively pursued this remedy and received relief by virtue of the compromise judgment rendered on June 24, 2011.

In the June 24, 2011 compromise judgment, James received relief from any future spousal support obligations previously imposed on him, as well as the incarceration sentences imposed on him for contempt of court. In exchange for those concessions from Debra, he agreed that the he would comply with the other

court orders in effect, keep his former wife advised of any changes in employment, and recognize that the $2,100.00 per month income assignment would remain in full force and effect until the judgment for past-due support was fully satisfied. Nothing in this judgment suggests that the issue of the nullity of the judgment arising from the June 22, 2000 hearing, was reserved as an issue for future consideration, and it is significant to the issue before us that James personally endorsed and accepted both the form and content of the June 24, 2011 judgment by his signature. Because neither litigant timely appealed the June 24, 2011 judgment, it was a final judgment even before James filed his August 11, 2011 nullity action. La.Code Civ.P. arts. 3942 and 3943.

We find that James' participation in the underlying proceedings between April 23, 2011, when he received personal service of Debra's March 3, 2011 rule, and the finality of the June 24, 2011 consent judgment constituted voluntary acquiescence in the judgment arising from the June 22, 2000 hearing. Thus, the trial court erred in finding that the judgment was a nullity. Accordingly, we render judgment reinstating the judgment arising from the June 22, 2000 hearing in its entirety except as modified by the June 24, 2011 compromise judgment.

## DISPOSITION

For the foregoing reasons, we reverse the trial court's judgment annulling the judgment arising from the June 22, 2000 hearing and render judgment reinstating that judgment in its entirety, subject to the modifications to that judgment made by the June 24, 2011 compromise judgment. We assess all costs of this appeal to James Bailey Flemming.

**REVERSED AND RENDERED.**

10